# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued September 22, 2017   Decided June 29, 2018

No. 16-7077

JENNIFER B. CAMPBELL,
APPELLEE

v.

DISTRICT OF COLUMBIA, A MUNICIPAL CORPORATION,
APPELLANT

WAYNE TURNAGE, IN HIS OFFICIAL CAPACITY AS DIRECTOR,
DISTRICT OF COLUMBIA DEPARTMENT OF HEALTH CARE
FINANCE,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:12-cv-01769)

*Holly M. Johnson*, Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for appellant. With her on the briefs were *Karl A. Racine*, Attorney General, *Todd S. Kim*, Solicitor General, and *Loren L. AliKhan*, Deputy Solicitor General.

2

*David C. Codell* argued the cause for appellee. On the brief were *Alan Lescht* and *Sara N. McDonough*. *Rani V. Rolston* and *Susan L. Kruger* entered appearances.

Before: GRIFFITH and PILLARD, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: Jennifer Campbell worked as a healthcare executive for the District of Columbia until she was fired based on accusations that she had improperly influenced the bidding process for the District's healthcare contracts. Campbell sued the District, alleging it had violated her Fifth Amendment due-process rights by leaking these accusations to the press and denying her an opportunity to refute them. A jury returned a verdict for Campbell on one of her due-process claims, and the district court refused to set it aside. The District appeals that decision, but we affirm the judgment of the district court.

I

A

In 2010, the District's Department of Health Care Finance ("Department") formed the Health Care Reform and Innovation Administration ("Administration") to establish the health-insurance exchange the District decided to create in response to the enactment of the Patient Protection and Affordable Care Act. The Administration divided this project into a planning phase and an implementation phase. Through a competitive bidding process, the Administration selected contractors to carry out the work of each phase. The contract

for planning was worth approximately $1M. The contract for implementing those plans was worth almost $75M.

In 2011, Jennifer Campbell became the director of the Administration, and in 2012, she was promoted to chief operating officer for the entire Department. She had worked at the Department since 2008, and prior to that she had held several high-level positions in the healthcare industry.

In 2012, the owner of the company that won the contract for the planning phase, Compass Solutions, contacted a former Department employee and reported that Campbell was steering contracts to certain contractors in violation of normal bidding procedures. This information was relayed to Department director Wayne Turnage around June 2, though the record is unclear on the precise date. Turnage spoke with the owner of Compass Solutions, who offered "a litany of allegations" against Campbell supported by emails and text messages. The owner also recommended Turnage speak with CGI Technologies and Solutions ("CGI"), a company that had withdrawn from bidding for the implementation contract. Turnage did and heard from a CGI executive that Campbell had contacted CGI, unsolicited, and urged the company to partner its bid with a politically connected contractor named Darryl Wiggins. The executive said she had "never been approached that way by a government entity involved in procurement." After seeking the advice of its general counsel, CGI decided to "forgo any business with the District."

On June 3, 2012, Turnage emailed his chief of staff and the Mayor's office to inform them of the allegations against Campbell and his plan to investigate. Turnage also told the director of human resources that he planned to place Campbell on administrative leave and would most likely fire her. The following day, the Department's human resources office put

Campbell on administrative leave but refused to answer her questions about the specific allegations lodged against her. Later that day, Campbell emailed Turnage's chief of staff and asked for an "opportunity to defend [her] professional reputation and more importantly [her] integrity." But Campbell never received an opportunity to refute the allegations.

Around June 7, the Mayor's staff allowed a reporter from the *Washington City Paper* to review Turnage's emails relating to the investigation. When the reporter informed Turnage a few days later that he had the relevant emails about Campbell, Turnage sent him several emails to provide additional background on the investigation.

The following morning, the *Washington City Paper* published a story under the headline "Health Care Finance COO Fired over Contract Steering Allegations." The article described the allegations against Campbell, relying in large measure on Turnage's emails. Reading the article was the first time Campbell learned the specific allegations against her. She was terminated later that day. Turnage then shared the emails with the *Washington Post*, which published a story under the headline "D.C. Official Is Fired over Contract Allegations."

B

In October 2012, Campbell sued the District under 42 U.S.C. § 1983, alleging, among other claims, that the District violated her Fifth Amendment due-process rights by unlawfully terminating her employment and leaking untrue allegations about her to the press, all without due process. Campbell was unemployed when she first brought suit, and only secured a full-time job within her chosen field in July 2014 while the lawsuit was ongoing. Before that she had been

unemployed for a little over two years since the time of her firing with only a few temporary jobs in the interim.

Campbell pursued two due-process claims: a "reputation-plus" claim and a "stigma-plus" claim. A plaintiff makes out a reputation-plus claim when the government takes certain adverse actions *and* defames the plaintiff, which occurred, Campbell argues, when the District not only fired her, but then leaked to the press defamatory information. *See O'Donnell v. Barry*, 148 F.3d 1126, 1140 (D.C. Cir. 1998). A plaintiff makes out a stigma-plus claim when the government takes certain adverse actions *and* those actions create "a stigma or other disability that foreclosed [the plaintiff's] freedom to take advantage of other employment opportunities," which took place, Campbell contends, when the District's actions against her precluded her from working in her chosen field. *Id.* (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 573 (1972)).

The District filed motions to dismiss and for summary judgment, but the district court allowed Campbell to proceed with both of her due-process claims. Campbell's case proceeded to a five-day jury trial. During the trial, the District unsuccessfully moved several times for judgment as a matter of law on Campbell's reputation-plus claim and her stigma-plus claim under Federal Rule of Civil Procedure 50(a). That rule authorizes a court to enter judgment for a party when "a reasonable jury would not have a legally sufficient evidentiary basis to find" for the other party on that issue.[*] As relevant for

---

[*] Rule 50(a) provides:

(1) *In General.* If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not

this appeal, the District's Rule 50(a) motions advanced two central arguments for rejecting Campbell's stigma-plus claim: (1) the harm to Campbell did not foreclose her from working in her profession because she retained a few temporary jobs after her termination; and (2) two years of unemployment are categorically insufficient to establish that Campbell was foreclosed from her field. The district court denied the District's motions and submitted the case to the jury, which returned a verdict for the District on the reputation-plus claim, but for Campbell on the stigma-plus claim.

After the jury returned its verdict, the District moved under Rule 50(b) to renew its motion for judgment as a matter of law on the stigma-plus claim. Rule 50(b) allows a party to renew its earlier Rule 50(a) arguments after entry of the judgment. But in the District's postverdict Rule 50(b) motion it raised a new argument that it did not make in its earlier Rule 50(a) motions. The District argued that Campbell had failed to present evidence that her *termination itself* caused the stigma. Without such evidence, the District claimed that Campbell's alleged stigma actually flowed from the District's *speech* (the press leaks), not its *action* (the termination). And because Campbell's claim was about speech, the District argued it was really a disguised reputation-plus claim that was trying to

---

have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

(A) resolve the issue against the party; and

(B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

(2) *Motion.* A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

establish defamation. The district court rejected this argument on the merits, concluding that Campbell need not show that her termination was the sole cause of the stigma that she suffered; instead, she need only show that the stigma "occurred in conjunction with, or flowed from" her termination. *Campbell v. District of Columbia*, No. CV 12-1769 (RC), 2016 WL 3023977, at *3-4 (D.D.C. May 25, 2016) (citing *O'Donnell*, 148 F.3d at 1141).

The District's postverdict Rule 50(b) motion also repeated its argument that Campbell was not foreclosed from working in her chosen field because she had found temporary jobs after her termination and was fully reemployed within two years. The district court rejected this argument, too, incorporating by reference an earlier ruling in which it had detailed Campbell's difficulty finding employment and the lack of authority supporting the District's proposed two-year rule. The District timely appealed.

II

The district court had jurisdiction over Campbell's suit under 28 U.S.C. § 1331, and we have jurisdiction pursuant to 28 U.S.C. § 1291. We review de novo a district court's denial of a motion for judgment as a matter of law. *See Muldrow ex rel. Estate of Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 165 (D.C. Cir. 2007). "We do not, however, lightly disturb a jury verdict. Judgment as a matter of law is appropriate only if the evidence and all reasonable inferences that can be drawn therefrom are so one-sided that reasonable men and women could not have reached a verdict in plaintiff's favor." *Id.* (quoting *McGill v. Muñoz*, 203 F.3d 843, 845 (D.C. Cir. 2000)).

8

III

A

On appeal the District primarily advances one argument: Campbell's stigma-plus claim should fail as a matter of law because it was based on government *speech*, not government *action*, and therefore it was merely a disguised reputation-plus claim. Because the jury rejected the reputation-plus claim, the District argues, what Campbell styles as a stigma-plus claim— but which is really a reputation-plus claim—must fail as well. We refer to this as the District's "speech argument." We need not resolve this argument, however, because the District did not include it in its Rule 50(a) motions, and thus failed to preserve it for appeal.

The District moved several times for judgment as a matter of law pursuant to Rule 50(a), but none of those motions advanced the speech argument. The District raised that argument for the first time in its postverdict Rule 50(b) motion; however, Rule 50(b) permits only the "renewing" of arguments made in prior Rule 50(a) motions. *See* Fed. R. Civ. P. 50(b); *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) ("A motion under Rule 50(b) is not allowed unless the movant sought relief on similar grounds under Rule 50(a) before the case was submitted to the jury."). *See generally Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394 (2006).

During trial the District moved under Rule 50(a) in a series of colloquies. The first time followed Campbell's presentation of her case-in-chief. There, the District repeated its summary-judgment arguments that Campbell's reputational harm did not foreclose her from working in her profession because she retained temporary work, and because two years of unemployment were categorically insufficient to establish that

Campbell was foreclosed from her profession. The district court denied that motion. Twice the next day the District made the same arguments under Rule 50(a), both before and after the parties rested their cases. The court took the motions under advisement.

The speech argument was nowhere to be found in any of these motions. The District never argued that Campbell presented insufficient evidence that her stigma was caused by the District's *action* (the termination) and not the District's *speech* (the press leaks). Nor did it argue Campbell's stigma-plus claim was really a disguised reputation-plus claim. Only after the court entered judgment for Campbell on the stigma-plus claim did the District file a motion under Rule 50(b) that raised the speech argument for the first time.

The District attempts to sidestep its Rule 50 defect with several arguments. The District claims it preserved the speech argument for appeal when it argued at trial that Campbell offered insufficient evidence to establish "the type of . . . stigma that's envisioned by this constitutional tort." However, a few sentences of context from the District's courtroom statements reveal otherwise:

> What we have, you know, again, the issue here is that the plaintiff has not shown that she has the type of disability that is—or stigma that's envisioned by this constitutional tort. And, you know, it is the equivalence of losing your bar license so you can never practice law again. Losing your security clearance so you can never work in the security field again. And within two years, the plaintiff was fully employed within her chosen field. During the time that she was unemployed . . . . she did [a number of] professional activities during the gap there. And some of those were paid.

The District did not advance the speech argument here. Instead, it argued, as it had been arguing all along, that Campbell's reputational harm did not foreclose her from working in her profession because she had retained temporary work after her termination and because two years of unemployment are categorically insufficient to constitute a stigma-based liberty deprivation.

Even without the context of the courtroom colloquy, the District's preservation argument would fail. A vague statement about a "type" of claim does not preserve all possible arguments marginally related to that claim. If it were otherwise, Rule 50(b)'s limitation to "renewing" Rule 50(a) arguments would have little meaning. Counsel could insert broad language in a Rule 50(a) motion and then use that language to advance novel arguments after entry of the judgment. This would undermine a key function of Rule 50, which is to provide notice of legal arguments and prevent counsel from sandbagging an opposing party by waiting until after entry of the judgment to raise a new argument that requires new evidence to be rebutted. *See Teneyck v. Omni Shoreham Hotel*, 356 F.3d 1139, 1149 (D.C. Cir. 2004) ("[A] Rule 50(a) motion gives the court and the nonmoving party notice of any deficiencies in the nonmoving party's case at a time when such deficiencies can still be corrected."); *see also McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1260-61 (11th Cir. 2016).

The District claims that, even if it failed to meet the technical requirements of Rule 50, it nonetheless satisfied the "purpose" of the Rule because Campbell did not need "notice" of the speech argument. According to the District, Campbell did not need notice because the "parties' dispute is a legal one," not factual, and therefore Campbell was not deprived of an opportunity to present evidence to rebut the speech argument.

*See* Reply Br. 19 & n.4 (citing *Kladis v. Brezek*, 823 F.2d 1014, 1017 (7th Cir. 1987)). We need not even address whether this is a credible Rule 50 argument, however, because the District's dispute with Campbell is not purely legal. The District itself argued that Campbell "offered no *evidence* suggesting that her termination, standing apart from the District's release of Turnage's e-mails to the press, would have created a stigma." District Br. 41 (emphasis added) (internal quotation marks omitted). Had the District included the speech argument in its Rule 50(a) motions, Campbell would have had an opportunity to respond.

The District did not put Campbell on notice of its speech argument prior to its Rule 50(b) motion, nor does it seem the District seriously considered that argument during trial. For example, the District failed to object to the jury instructions, which were flatly inconsistent with the speech argument. The instructions directed the jury to return a verdict for Campbell on the stigma-plus claim if she proved "that [1] *the District's release of emails to the press* and termination of her employment left a stigma on her [2] by having the broad effect of largely precluding her from pursuing her chosen career." J.A. 116 (emphasis added). In other words, the jury instructions identified the relevant government action to include the District's release of emails—what the District now calls its "speech." If the District had been advancing the speech argument, one might expect the District to object to these instructions because they allow the jury to find a stigma-plus claim based on the District's termination of Campbell in conjunction with its "speech." The District's failure to object further suggests that it was not advancing the speech argument during the trial.

The District also claims it included the speech argument in its Rule 50(a) motions because it "moved for a directed verdict

on [Campbell's] 'stigma or foreclosure' theory based on insufficiency of the evidence." But that simply repeats the definition of a Rule 50(a) motion. By definition, judgment as a matter of law is appropriate only when there is insufficient evidence for an adverse judgment. *See* Fed. R. Civ. P. 50(a); *see also* 9B Arthur R. Miller, *Federal Practice and Procedure* § 2531 Standard Distinguished from Other Procedures— New Trial (3d ed. 2015).

The District failed to preserve its speech argument, and such a failure generally precludes appellate review. *See Liff v. Office of Inspector Gen. for U.S. Dep't of Labor*, 881 F.3d 912, 919 (D.C. Cir. 2018) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below." (quoting *Singleton v. Wulff*, 428 U.S. 106, 120 (1976))). Although we have discretion to address issues raised for the first time on appeal, we generally exercise this discretion only in "exceptional cases or particular circumstances," such as when a case presents "a novel, important, and recurring question of federal law, or where the new argument relates to a threshold question such as the clear inapplicability of a statute." *Id.* (internal quotation marks omitted). The District has identified no exceptional circumstances here, so we decline to consider its speech argument.

B

In addition to the speech argument, the District repeats its Rule 50(a) argument that Campbell was not foreclosed from working in her chosen field because she found full-time employment within two years of her termination. According to the District, two years of unemployment are never sufficient to establish that a plaintiff has been deprived of her liberty interest

in pursuing a chosen profession. The district court rejected this argument and so do we.

The government violates an individual's constitutional due-process rights if it deprives her of a liberty or property interest without providing sufficient procedural protections. *See Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 538 (D.C. Cir. 2015). One of the liberty interests protected by the Fifth Amendment is the right to "follow a chosen profession free from unreasonable governmental interference." *Id.* (quoting *Greene v. McElroy*, 360 U.S. 474, 492 (1959)). A plaintiff can show a deprivation of that liberty interest under the stigma-plus theory when the government takes certain adverse actions and those actions foreclose her freedom to pursue a chosen profession. *See O'Donnell*, 148 F.3d at 1140.

Our precedents recognize two ways for a plaintiff to establish that she has been foreclosed from her profession. First, she may show that the government's adverse action "formally or automatically excludes" her from some category of work, such as with debarment. *Kartseva v. Dep't of State*, 37 F.3d 1524, 1528 (D.C. Cir. 1994). Second, even when the government's action does not have the "binding effect" of a formal exclusion, it may still implicate a liberty interest if it has "the broad effect of largely precluding [the plaintiff] from pursuing her chosen career." *O'Donnell*, 148 F.3d at 1141 (quoting *Kartseva*, 37 F.3d at 1528). Campbell pursued this route.

The district court rejected the District's categorical two-year argument several times, most extensively when denying summary judgment. There, the court noted that during Campbell's two years of unemployment she had applied to over thirty positions and secured only temporary jobs, all of which a reasonable jury could find were outside her chosen

field. In addition, a "vocational rehabilitation counselor" testified that Campbell's difficulty finding work was due to the negative publicity surrounding her termination. Moreover, Campbell submitted evidence that at least one prospective employer was dissuaded from hiring her because of the news coverage of the allegations against her. Based on this evidence, the district court concluded that a reasonable jury could determine that the District's actions had the "broad effect of largely precluding [Campbell] from pursuing her chosen career." *Campbell v. District of Columbia*, 126 F. Supp. 3d 141, 153 (D.D.C. 2015) (quoting *O'Donnell*, 148 F.3d at 1141). At trial, the jury heard evidence to the same effect, largely through Campbell's testimony.

Before the district court, the District cited no binding or persuasive authority to support its proposed two-year rule, and it continues to cite no authority on appeal. Instead, the District relies on citations that simply describe the foreclosure standard as demanding. *See, e.g.*, *O'Donnell*, 148 F.3d at 1141 (stating that the government's adverse action must have "the effect of seriously affecting, if not destroying a plaintiff's ability to pursue his chosen profession, or substantially reducing the value of his human capital" (internal quotation marks omitted)); *see also Taylor v. Resolution Tr. Corp.*, 56 F.3d 1497, 1506-07 (D.C. Cir. 1995) (referring to the standard as "high" and noting that the government's adverse action must "substantially reduce the value of [the plaintiff's] human capital, as it would if [the plaintiff's] skills were highly specialized and rendered largely unmarketable as a result of the agency's acts"). But none of these cases support a categorical rule that two years of unemployment cannot satisfy the foreclosure element. To the contrary, some precedent suggests that less time than two years may suffice to show a liberty deprivation. *Cf. Wisconsin v. Constantineau*, 400 U.S. 433, 435, 437 (1971) (holding that a police notice posted in local

liquor stores barring sales or gifts of liquor to Constantineau "for one year" imposed a "badge of infamy" and required procedural protections).

The District fails to provide any compelling reason to adopt a categorical two-year rule. Even assuming that a categorical rule were appropriate, why should it be set at two years instead of one, three, or five years? The District provides no explanation. If the government terminates an employee and ruins her professional reputation without due process, how long must she wait before bringing her claim? Again, the District provides no response.

Our precedents do not mandate a rigid minimum-duration rule governing how long a former government employee must be unemployed before she can claim that the government's actions had the "broad effect of largely precluding [her] from pursuing her chosen career." *O'Donnell*, 148 F.3d at 1141. Because the District has not persuaded us that the Constitution requires such a fixed line, nor provided guidance on how such a line could be drawn, we do not draw one today.

The foreclosure element of a stigma-plus claim affords a level of discretion to juries. Here, the jury weighed the evidence and determined that Campbell satisfied the standard. Perhaps a reasonable jury might have found otherwise, but this jury's verdict was not wrong as a matter of law. *See Muldrow*, 493 F.3d at 165.

## IV

We affirm the district court's order denying the District's motion for judgment as a matter of law.

*So ordered.*