*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-CV-374

THORSTEN P. SUNDBERG, *et al.*, APPELLANTS,

v.

TTR REALTY, LLC, *et al.*, APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(CAB-4366-13)

(Hon. Judith N. Macaluso, Trial Judge)

(Argued December 11, 2014                    Decided February 12, 2015)

*Timothy R. Clinton*, with whom *Matthew J. Peed* was on the brief, for appellants.

*Dale K. Cathell*, *pro hac vice*, by special leave of court, with whom *J. Hess* and *Richard M. Kremen* were on the brief, for appellee David Winer.

*Spencer K. Stephens* for appellees TTR Realty, LLC, and Mansour Abu-Rahmeh.

Before WASHINGTON, *Chief Judge*, BLACKBURNE-RIGSBY*, Associate Judge*, and OKUN, *Associate Judge, Superior Court of the District of Columbia.**

---

*Sitting by designation pursuant to D.C. Code § 11-707 (a) (2012 Repl.).

OKUN, *Associate Judge, Superior Court of the District of Columbia*:   We live in an age of seemingly boundless information, and this information serves as one of our most vital currencies.  In this case, the purchasers of a residence allege, in effect, that they were deprived of this currency because they were not provided with accurate information concerning an impending construction project at a neighboring building.  With one exception, the trial court found that the purchasers failed to sufficiently allege a cause of action in their complaint and granted the seller's and realtor's motions to dismiss.  In granting the motions to dismiss, the trial court found that the purchasers could not establish that they detrimentally relied on the seller's and realtor's alleged misrepresentations and omissions, and could not establish a breach of the covenant of good faith and fair dealing, because the alleged misrepresentations and omissions occurred after the purchasers signed the contract to buy the property.  Although we believe that there may be cases where a cause of action can properly be based on the failure to provide accurate information about a property, even if the misrepresentations or omissions occur after the sales contract is signed, this case is not one of them.  Accordingly, for the reasons set forth below, we affirm.

**PROCEDURAL AND FACTUAL BACKGROUND**

In the fall of 2012, appellants Thorsten P. Sundberg ("Sundberg") and Debra T. Huang ("Huang") purchased a residence from appellee David Winer ("Winer"), who sold the residence by using the services of a realty company and realtor, appellees TTR Realty, LLC ("TTR Realty"), and Mansour Abu-Rahmeh ("Abu-Rahmeh"). According to the complaint filed by appellants, after the parties signed a contract for the sale of the property, but before the parties actually transferred title to the property, appellees intentionally provided false information and withheld material information from appellants about a construction project that was scheduled to occur at the Old Pawn Shop, a building across the street from their residence. The complaint further alleged that the construction project began shortly after appellants moved into their residence, and that this construction substantially and permanently diminished the value of their property. Finally, appellants claimed that they would not have purchased the property, and instead would have breached the contract and been subject to the contract's remedies for breach of contract, had they been truthfully informed of the impending construction project. The appellants alleged that appellees' actions violated the Consumer Protection Procedures Act ("CPPA" or the "Act") and the covenant of

good faith and fair dealing, and involved fraudulent and negligent misrepresentations and omissions.

Appellees TTR Realty and Abu-Rahmeh filed a motion to dismiss the complaint, arguing that the complaint failed to state a cause of action for two reasons. First, they argued that all the components of the sales contract were subsumed into the deed that was signed by the parties more than two months after the contract was signed, and that the deed did not contain any false statements concerning the construction plans of the Old Pawn Shop. Second, they claimed that their disclosure obligations were limited to disclosures concerning the physical condition of the property purchased by appellants, and did not extend to the condition of neighboring properties. The trial court rejected these arguments and denied the motion to dismiss.

Appellee Winer, meanwhile, filed a motion to dismiss on very different grounds. Winer argued that the trial court should dismiss the counts alleging fraudulent and negligent misrepresentations and omissions because the alleged misrepresentations and omissions occurred after the execution of the sales contract and appellants, therefore, could not have relied on them at the time they signed the contract. In addition, Winer asserted that the CPPA count should be dismissed

because the statute only applies to merchants and he was not a merchant as defined by the Act. Finally, Winer claimed that the count alleging a breach of the covenant of good faith and fair dealing should be dismissed because he fully performed his obligations under the contract when he conveyed good title to the purchasers and vacated the premises in a timely manner.

The trial court granted Winer's motion, dismissing the CPPA and breach of good faith and fair dealing counts with prejudice, and dismissing the misrepresentation and omission counts without prejudice. More specifically, the trial court rejected appellants' argument that the CPPA applied to Winer, even though he was not a merchant, because Winer conspired with TTR Realty and Abu-Rahmeh, and aided and abetted their violations. The court held that a non-merchant could not be vicariously liable under the CPPA, noting that a contrary result would establish a cause of action against a non-merchant even though the CPPA excluded non-merchants from its coverage.[1] The trial court also dismissed the breach of good faith and fair dealing count with prejudice, rejecting appellants' argument that the withholding of accurate information about the construction plans

---

[1] Although appellants argued that Winer could be liable under both conspiracy and aider and abettor theories, the trial court only addressed appellants' conspiracy theory in its order granting Winer's motion to dismiss. However, the trial court explicitly rejected appellants' aider and abettor theory when it denied appellants' subsequent motion for reconsideration.

at the Old Pawn Shop deprived appellants of the fruits of the contract, and agreeing with Winer that appellants received the fruits of the contract when they received title to the property at settlement.

Finally, the trial court held that the fraudulent and negligent misrepresentation and omission counts should be dismissed, finding that appellants failed to show detrimental reliance because the alleged misrepresentations and omissions occurred after the contract was signed. The court rejected appellants' argument that appellees' misrepresentations and omissions deprived them of the opportunity to not purchase the property and instead face the remedies provided in the contract for breach of contract. The trial court dismissed these counts without prejudice, providing appellants the opportunity to allege with more particularity any misrepresentations or omissions that occurred prior to the signing of the sales contract.

After the trial court granted Winer's motion to dismiss, TTR Realty and Abu-Rahmeh filed a motion for judgment or, in the alternative, for reconsideration. The trial court granted this motion in part, dismissing the fraudulent misrepresentation and omission counts, without prejudice, and dismissing the breach of good faith and fair dealing count with prejudice, for the reasons set forth

in the order granting Winer's motion to dismiss. However, the trial court did not dismiss the CPPA count against TTR Realty and Abu-Rahmeh, finding that they were merchants under the CPPA and also noting that the complaint adequately alleged a violation of the CPPA because the Act does not require detrimental reliance as an element of a claim.

Following the trial court's grant of Winer's motion to dismiss and its partial grant of TTR Realty's and Abu-Rahmeh's motion for judgment, appellants filed a motion to certify the case for appeal and to stay the trial proceedings, pursuant to Super. Ct. Civ. R. 54 (b). The trial court granted appellants' motion, and this appeal followed.[2]

---

[2] Rule 54 (b) authorizes the trial court to enter a final appealable judgment in cases involving multiple claims or multiple parties, even if some claims in the case remain pending, upon a finding that there is no just reason to delay the appeal and upon an express direction for entry of judgment. Because the trial court entered such an order in this case, we have jurisdiction over this appeal. *See, e.g.*, *Dyhouse v. Baylor*, 455 A.2d 900, 901 (D.C. 1983).

## ANALYSIS

## Motion to Dismiss Standard

We review *de novo* the dismissal of a complaint under Super. Ct. Civ. R. 12 (b)(6) for failure to state a claim upon which relief can be granted. *Potomac Dev. Corp. v. District of Columbia*, 28 A.3d 531, 543 (D.C. 2011); *Grayson v. AT&T Corp.*, 15 A.3d 219, 228 (D.C. 2011) (en banc). In determining whether a complaint sufficiently sets forth a claim, the court must construe the complaint in the light most favorable to the plaintiff and must take the facts alleged in the complaint as true. *Casco Marina Dev., L.L.C. v. District of Columbia Redevelopment Land Agency*, 834 A.2d 77, 81 (D.C. 2003). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" also are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

Rather, "[t]o survive a motion to dismiss [under Rule 12 (b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Potomac Dev. Corp.*, 28 A.3d at 544 (quoting *Ashcroft*, 556 U.S. at 678); *see also Bell Atl. Corp.*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Likewise, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.*

## CPPA

The CPPA is a "comprehensive statute designed to provide procedures and remedies for a broad range of practices which injure consumers." *District Cablevision Ltd. P'ship v. Bassin*, 828 A.2d 714, 723 (D.C. 2003) (quoting *Atwater v. District of Columbia Dep't of Consumer & Regulatory Affairs*, 566 A.2d 462, 465 (D.C. 1989)). Indeed, we have long considered the CPPA to be a remedial

statute that must be "construed and applied liberally to promote its purpose." *Grayson*, 15 A.3d at 244-45 (quoting D.C. Code § 28-3901 (c) (2012 Repl.)). Nonetheless, the CPPA does not cover all consumer transactions, and instead only covers "trade practices arising out of consumer-merchant relationships." *Snowder v. District of Columbia*, 949 A.2d 590, 599 (D.C. 2008) (quoting *Howard v. Riggs Nat'l Bank*, 432 A.2d 701, 709 (D.C. 1981)). The CPPA defines a "merchant" in relevant part as a person who, in the ordinary course of business, sells or supplies consumer goods or services. *See* D.C. Code § 28-3901 (a)(3).

In this case, appellants acknowledged that Winer was not a "merchant" under the CPPA because he was not in the business of selling residential properties. Nonetheless, they argued that Winer's actions were covered by the CPPA because he conspired with and aided and abetted TTR Realty and Abu-Rahmeh, who indisputably were merchants. *See, e.g.*, *Gomez v. Independence Mgmt. of Delaware, Inc.*, 967 A.2d 1276, 1287 n.12 (D.C. 2009). The trial court rejected this argument because it would extend liability beyond that authorized by the CPPA. We agree with the trial court for the following reasons.

First, we have not recognized the tort of aiding and abetting in the District, *see Flax v. Schertler*, 935 A.2d 1091, 1107 (D.C. 2007), and we likewise have

cited authority suggesting that "a claim of civil conspiracy does not lie for violation of a statute" absent statutory language to the contrary. *See Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 739 (D.C. 2000) (citing *Monsanto v. Electronic Data Sys. Corp.*, 529 N.Y.S.2d 512 (N.Y. App. Div. 1988)); *see also Findlay v. CitiMortgage, Inc.*, 813 F. Supp. 2d 108, 122 (D.D.C. 2011) (rejecting civil conspiracy claim under CPPA and noting that "the District of Columbia Court of Appeals has expressed skepticism about statutory violations serving as underlying torts for civil conspiracy claims where the statutory right at issue has no common law tort analogue"); *Armstrong v. Accrediting Council for Continuing Educ. & Training, Inc.*, 832 F. Supp. 419, 425 (D.D.C. 1993) ("[T]he court holds that the CPPA creates only those causes of action specifically enumerated within its provisions; a cause of action creating liability for aiders and abettors of those who allegedly violate the CPPA is not included."), *vacated on other grounds*, 84 F.3d 1452 (D.C. Cir. 1996).

Second, as the trial court noted, if we were to allow a non-merchant to be held liable under the CPPA either as an aider and abettor or a co-conspirator, we would be extending the liability specifically authorized by the CPPA to cover the actions of a wide variety of people or entities, such as appellee Winer, who are not within the category of people or entities covered by the Act. Although the CPPA

"was intended to be a far-reaching consumer protection law," *Howard*, 432 A.2d at 710, there is no provision in the Act that either explicitly or implicitly authorizes aider and abettor liability or civil conspiracy liability to be imposed upon a non-merchant. *See Armstrong*, 832 F. Supp. at 425 ("[N]o provision of the CPPA creates a cause of action for aider-and-abettor liability[;] . . . it is not clear from the language of the statute why a 'person' not subject to primary liability should be subject to secondary liability.").[3] Thus, we conclude that the CPPA does not authorize liability to be imposed on non-merchants for either aiding and abetting or civil conspiracy, and we uphold the trial court's dismissal of the CPPA count against appellee Winer.

---

[3] Appellants argue that the CPPA authorizes both aider and abettor liability and civil conspiracy liability for non-merchants because the CPPA was modeled after a comparable California statute under which this type of liability has been imposed, citing *People v. Toomey*, 203 Cal. Rptr. 642 (Cal. Ct. App. 1984), in support of their argument. However, *Toomey* does not dictate a different result. First, the defendant in *Toomey* clearly was a merchant because he was one of the two co-owners of the business, along with his wife, and also was "the president and operating officer" of the company who "orchestrated all aspects of the business." 203 Cal. Rptr. at 652. Second, although certain provisions of the CPPA were modeled on the California statute, there is no indication that the CPPA was meant to include aider and abettor liability or co-conspirator liability; to the contrary, the provisions that were modeled on the California statute were contained in the 2000 amendments to the CPPA, authorized the remedies of disgorgement and restitution and representative actions on behalf of other consumers, and did not address either aider and abettor or civil conspiracy liability. *See Grayson*, 15 A.3d at 241-42 & nn. 63-64.

**Fraudulent and Negligent Misrepresentations and Omissions**

In order to sufficiently allege fraudulent misrepresentations or omissions, a plaintiff must allege facts showing that a person or entity "(1) made a false representation of or willfully omitted a material fact; (2) had knowledge of the misrepresentation or willful omission; (3) intended to induce [another] to rely on the misrepresentation or willful omission; (4) the other person acted in reliance on that misrepresentation or willful omission; and (5) suffered damages as a result of [that] reliance." *Schiff v. American Ass'n of Retired Persons*, 697 A.2d 1193, 1198 (D.C. 1997) (citing *Howard*, 432 A.2d at 706); *see also Saucier v. Countrywide Home Loans*, 64 A.3d 428, 438 (D.C. 2013) (to sufficiently allege common law fraud, a plaintiff must allege facts demonstrating "(1) a false representation (2) in reference to a material fact, (3) made with knowledge of  its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation."). A false representation may be either "an affirmative misrepresentation or a failure to disclose a material fact when a duty to disclose that fact has arisen." *Id.* (quoting *Rothenberg v. Aero Mayflower Transit Co.*, 495 F. Supp. 399, 406 (D.D.C. 1980)). A misrepresentation is "material" if it would be "likely to induce a reasonable person to manifest his assent, or if the maker knows that it would be likely to induce the recipient to do so." *Id.* at 438-39 (quoting *Sarete, Inc. v. 1344 U Street*

*Ltd. P'ship*, 871 A.2d 480, 493 (D.C. 2005), citing RESTATEMENT (SECOND) OF CONTRACTS, § 162 (1981). Although the non-disclosure of material information may constitute fraud when there is a duty to disclose, "mere silence does not constitute fraud unless there is a duty to speak." *Id.* at 439 (quoting *Kapiloff v. Abington Plaza Corp.*, 59 A.2d 516, 517 (D.C. 1948)).

In contrast to a complaint that alleges fraudulent misrepresentations, a complaint alleging negligent misrepresentations need not allege that the defendant had knowledge of the falsity of the representation or the intent to deceive. However, a plaintiff alleging negligent misrepresentations or omissions still must allege facts indicating that he relied on the defendant's misrepresentation or omission to his detriment. *See, e.g.*, *Kumar v. District of Columbia Water & Sewer Auth.,* 25 A.3d 9, 15 (D.C. 2011). More specifically, a plaintiff alleging negligent misrepresentations or omissions must show "(1) that [the defendant] made a false statement or omitted a fact that he had a duty to disclose; (2) that it involved a material issue; and (3) that [the plaintiff] reasonably relied upon the false statement or omission to his detriment." *Id.* at 15 n.9 (quoting *Redmond v. State Farm Ins. Co.*, 728 A.2d 1202, 1207 (D.C. 1999)).

In this case, appellants did not allege in their complaint that appellees made any misrepresentations or omissions prior to the time that appellants signed the sales contract for the property. Thus, as the trial court found, appellants failed to allege that they detrimentally relied on any such misrepresentations or omissions when they signed the sales contract. Appellants claim, however, that they detrimentally relied on these misrepresentations and omissions after they signed the contract, because they would not have purchased the property at closing had they been provided with truthful information about the impending construction at the Old Pawn Shop, and instead would have breached the contract and then been subject to the breach of contract remedies set forth in the sales contract.

The difficulty with appellants' argument is their premise that they had a right to breach the contract, and that this right was unlawfully foreclosed by appellees' alleged misrepresentations and omissions. To the contrary, a party has no "right" to breach a contract, and appellants therefore cannot rely on such a "right" in support of their detrimental reliance argument. Indeed, we have carefully delineated the various circumstances under which a party may seek to avoid his or her obligations under a contract, but have not included the "right" to breach a contract as one of these circumstances. *See, e.g., Hernandez v. Banks*, 65 A.3d 59, 75 (D.C. 2013) (en banc) (party may avoid obligations under contract if

that party was mentally incapacitated at time contract was signed); *Island Dev. Corp. v. District of Columbia*, 933 A.2d 340, 349-50 (D.C. 2007) (party may avoid contract obligations if performance of contract has become impossible or impracticable, or if events beyond parties' control have frustrated the contract's purpose); *Isaac v. First Nat'l Bank*, 647 A.2d 1159, 1163 (D.C. 1994) (party may avoid contract obligations based on mutual mistake, fraud in the inducement or duress); *Truitt v. Miller*, 407 A.2d 1073, 1079 (D.C. 1979) (party may avoid contract obligations if contract violates statute designed to protect public); *see also* RESTATEMENT (SECOND) OF CONTRACTS, § 7 (providing similar examples of voidable contracts).

Appellants argue that they had a "right" to breach the contract because "the modern law of damages is based on the premise that a contractual obligation is not necessarily an obligation to *perform*, but rather an obligation to *choose* between performance and compensatory damages." *See* Charles J. Goetz & Robert E. Scott, *Liquidated Damages, Penalties and the Just Compensation Principle: Some Notes on an Enforcement Model and a Theory of Efficient Breach*, 77 COLUM. L. REV. 554, 558 (1977) (emphasis in appellants' brief); *see also Northwest Airlines, Inc. v. U.S. Dep't of Transp.*, 15 F.3d 1112, 1121 n.5 (D.C. Cir. 1994) (citing RESTATEMENT (SECOND) OF CONTRACTS, ch. 16, intro. note at 100) ("'Efficient

breach' refers to the principle that a breaching party has the option of paying damages rather than performing its contractual obligations where damages are an adequate substitute for specific performance."). Although this argument has some force, it also has a number of shortcomings. Indeed, as the drafters of the RESTATEMENT (SECOND) OF CONTRACTS have noted, this approach "fails to take account notions of the sanctity of contract and the resulting moral obligation to honor one's promises." *Id.* Moreover, this argument has no support in our case law, and is contrary to relevant Supreme Court case law. *See Rousey v. Jacoway*, 544 U.S. 320, 328 (2005) (contracting parties do not have "an unrestricted right to breach a contract simply because the price of doing so is the payment of damages.").

Furthermore, the contract itself did not provide appellants with the right to breach the contract. Rather, the default clause in the contract stated as follows:

> If purchaser fails to complete settlement for any reason other than default by seller, *at the option of seller*, the deposit may be liquidated damages (not as a penalty) in which event purchaser shall be relieved from further liability to seller. If seller does not elect to accept the deposit as liquidated damages, the deposit may not be the limit of purchaser's liability in the event of a default.

Sales Contract at ¶ 23 (emphasis added). Thus, contrary to appellants' argument, the sales contract provided appellees with the option to seek liquidated damages or other damages resulting from appellants' default, but did not give appellants the option of breaching the contract had they received the information that appellees allegedly failed to provide.[4]

In sum, appellants failed to sufficiently allege that they detrimentally relied on appellees' alleged fraudulent and negligent misrepresentations and omissions. Therefore, the trial court did not err in granting appellees' motions to dismiss these counts.

---

[4] Appellants argued in their appellate brief that the sales contract provided them with the option of consummating the purchase on the agreed-upon terms or "walking away" from the contract, citing *Dodek v. CF 16 Corp.*, 537 A.2d 1086 (D.C. 1988), in support of their argument. However, at oral argument, appellants clarified that they were not asserting that the sales contract was an option contract, rather than a binding contract that required them to purchase the property under the terms set forth in the contract. Moreover, even if appellants had not clarified their position in this manner, it is clear that the sales contract in this case was not an option contract. In fact, in *Dodek*, we found that the contract at issue was an option contract because it gave the purchaser the "option and privilege to 'choose between consummating the purchase on the agreed upon terms or of walking away, for any reason or no reason, with no obligation or liability whatever save the loss of his deposit." *Id.* at 1095 (quoting *Green Manor Corp. v. Tomares*, 295 A.2d 212, 214 (Md. 1972)). In this case, by contrast, the sales contract did not give the purchaser the right to walk away from the contract and face only the loss of the deposit; rather, the contract gave the sellers the right to seek the recovery of the deposit or any other damages if the purchasers defaulted on their obligations under the contract.

**Breach of Covenant of Good Faith and Fair Dealing**

Every contract contains an implied covenant of good faith and fair dealing. *See, e.g.*, *Wright v. Howard Univ.*, 60 A.3d 749, 754 (D.C. 2013). This covenant precludes any party from doing "anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract . . . ." *Abdelrhman v. Ackerman*, 76 A.3d 883, 891 (D.C. 2013) (quoting *Hais v. Smith*, 547 A.2d 986, 987 (D.C. 1988)). To state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege either "bad faith or conduct that is arbitrary and capricious." *Id.* at 891-92; *Wright*, 60 A.3d at 754. If a party "evades the spirit of the contract, willfully renders imperfect performance, or interferes with performance by the other party, he or she may be liable for breach of the implied covenant of good faith and fair dealing." *Paul v. Howard Univ.*, 754 A.2d 297, 310 (D.C. 2000) (quoting *Hais*, 547 A.2d at 987-88); *see also* RESTATEMENT (SECOND) OF CONTRACTS, § 205 ("Subterfuges and evasions violate the obligation of good faith in performance . . . [b]ut the obligation goes further: bad faith may be overt or consist of inaction, and fair dealing may require more than honesty.").

In this case, appellants allege that appellees violated the duty of good faith and fair dealing through misrepresentations and omissions after the sales contract was signed and before the parties closed the transaction. They further allege that these misrepresentations and omissions deprived them of the fruits of the sales contract – namely, a residence whose value would not be diminished by the impending construction at the Old Pawn Shop. The trial court disagreed with appellants, finding that they received the fruits of the sales contract because they received good title to the property at issue under the terms and conditions set forth in the contract.

We agree with the trial court. As an initial matter, we must review the terms of the contract at issue in order to determine whether appellees violated the duty of good faith and fair dealing by evading the spirit of the contract, purposefully failing to perform their obligations under the contract, or interfering with appellants' ability to perform under the contract. The contract required Winer to provide good and marketable title to the property at an agreed-upon price and by a specified date. There is no dispute that Winer fully and timely performed this obligation. The contract also contained a contingency clause that allowed appellants to void the contract if the residence did not pass a home inspection within a specified time period. There is no dispute that appellants did not exercise

this contingency clause. Moreover, this provision only covered an inspection of the property that appellants agreed to purchase, and did not include or authorize an inspection of any neighboring property. Therefore, any misrepresentation or omission concerning the Old Pawn Shop would not have affected the home inspection contingency clause contained in the contract.

The sales contract also contained a property condition statement furnished by the seller that addressed the property's structural conditions; the operating condition of its heating, air conditioning, plumbing and electrical systems; any known defects existing in numerous specified appliances; any problems relating to the exterior of the property; any environmental hazards (such as asbestos, radon gas, lead based paint, underground storage tanks, formaldehyde, contaminated soil, or other contaminants); and any zoning violations, non-conforming uses, violation of building restrictions or setback requirements, or any easements (other than utilities) on or affecting the property. Notably, the property condition statement did not require appellees to provide any information about conditions, including impending construction, at any neighboring properties.[5] Accordingly, because the

---

[5] Arguably, appellees would have been required to disclose information about the impending construction at the Old Pawn Shop if this construction constituted a non-conforming use, or violated relevant zoning or building regulations, and affected the property to be purchased by appellants. However,

(continued….)

sales contract did not impose any duty on appellees to inform appellants about the impending construction project at the Old Pawn Shop, any misrepresentations or omissions concerning this project did not deprive appellants of the fruits of the contract.

Our conclusion with respect to the covenant of good faith and fair dealing in this case does not mean, as appellees have argued, that a seller or realtor can never violate the covenant of good faith or fair dealing based on misrepresentations or omissions that occur after the sales contract is signed but before the parties transfer title to the property. To the contrary, had appellees made fraudulent or negligent misrepresentations or omissions concerning the structural conditions of the property to be purchased by appellants, or concerning some other condition explicitly set forth in the sales contract, such misrepresentations or omissions may have given rise to a cause of action for violating the covenant of good faith and fair dealing, even if the misrepresentations or omissions occurred in the time period between the signing of the contract and the transfer of title. However, we need not

---

(….continued)
appellants did not allege such a violation or non-conforming use in their complaint and did not make any such argument in their appellate briefs. To the contrary, they only briefly cited this provision in their opposition to TTR Realty's and Abu-Rahmeh's motion to dismiss, and did not provide any factual information in support of this argument. Thus, even if this argument had been properly preserved for appeal, it would have lacked a sufficient factual foundation in any event.

decide that issue because there is no evidence in this case, and no allegation in the complaint, that appellees made any such misrepresentations or omissions here. Accordingly, we affirm the trial court's dismissal of the count alleging a breach of the covenant of good faith and fair dealing.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

*So ordered*.