*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 20-CV-325

MA SHUN BELL, APPELLANT,

V.

FIRST INVESTORS SERVICING CORPORATION, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CAB-8266-19)

(Hon. José M. Lopez, Trial Judge)

(Argued June 16, 2021                    Decided August 12, 2021)

*Radi Dennis* for appellant.

*David M. Ross*, with whom *Kevin P. Farrell*, was on the brief, for appellee.

Before THOMPSON and EASTERLY, *Associate Judges*, and OKUN* *Associate Judge, Superior Court of the District of Columbia.*

THOMPSON, *Associate Judge*:    On January 9, 2020, plaintiff/appellant Ma Shun Bell filed her Amended Complaint, individually and on behalf of persons similarly situated, against defendant/appellee First Investors Servicing Corporation ("FISC"), alleging abuse of process and defamation as well as violations of the

---

* Sitting by designation pursuant to D.C. Code § 11-707(a) (2012 Repl.).

District of Columbia Automobile Financing and Repossession Act ("AFRA"), 16 D.C.M.R. § 300 *et seq.* (2021); the District of Columbia Consumer Protection and Procedures Act ("CPPA"), D.C. Code § 28-3901 *et seq.* (2013 Repl. & 2021 Supp.); and the District of Columbia Debt Collection Law ("DCL"), D.C. Code § 28-3814 *et seq.* (2013 Repl.). On March 16, 2020, the Superior Court granted FISC's Super. Ct. Civ. Pro. R 12(b)(6) Motion to Dismiss on the ground of res judicata/claim preclusion. The instant appeal followed. For the reasons that follow, we affirm in part, reverse in part, and remand.

## I. Factual Background

In 2012, Ma Shun Bell purchased a vehicle from A&H Motors through a Retail Installment Sales Contract (the "installment sales contract" or the "RISC") that was subsequently assigned to FISC. Towards the end of 2016, Ms. Bell stopped making payments on the vehicle and FISC repossessed the vehicle later that year. On March 29, 2017, FISC filed a claim against Ms. Bell in the Small Claims and Conciliation Branch of the Superior Court (the "Small Claims Branch" or "Small Claims Court") for what it asserts was the "deficiency balance owed." As part of the claim, FISC filed a "Verification Requirement Sheet," which

indicated that Ms. Bell owed FISC "$8,271.41 with interest" and stated that the amount was "justly due and owing[.]"

On May 17, 2017, Ms. Bell appeared unrepresented in Small Claims Court and signed a settlement agreement after taking part in court-sponsored mediation. In the agreement, she agreed to pay FISC $8,271.41, at the rate of $150.00 per month, beginning on June 30, 2017. The agreement provided that if Ms. Bell defaulted by failing to make any of the payments, FISC was entitled to apply for entry of judgment against her in the amount of $8,271.41, plus prejudgment interest of $101.97. After Ms. Bell failed to make her monthly payment, FISC obtained a judgment against her on August 8, 2018. After having obtained counsel, Ms. Bell filed a motion to vacate the judgment, a motion for judicial review, and an application for allowance of appeal. All of these requests were denied.

On January 9, 2020, Ms. Bell filed her Amended Complaint, individually and on behalf of those similarly situated, against FISC, alleging five causes of action. The first and second causes of action included class and individual claims for violations of the AFRA (and its implementing regulations) and the CPPA. Ms.

Bell's third, fourth, and fifth causes of action were individual claims alleging violations of the DCL, abuse of process, and defamation.

On January 22, 2020, FISC filed its Motion to Dismiss the Amended Complaint. On March 16, 2020, the trial court granted FISC's motion based on the doctrine of res judicata/claim preclusion. The trial court found that "Ms. Bell's allegations about FISC's collection practices and the underlying collection case [in which judgment was entered in Small Claims Court] share a common nucleus of facts[.]" The trial court also rejected Ms. Bell's argument that claim preclusion applied only to claims that were compulsory counterclaims in the suit that she and FISC settled. This appeal followed.

In her opening brief, Ms. Bell argues that there are several bases for reversal. First, she asserts that the claims she set out in her Amended Complaint were permissive rather than compulsory in FISC's Small Claims Branch suit and contends that, under the principle applied in this court's decision in *Smith v. Greenway Apartments LP*, 150 A.3d 1265 (D.C. 2016), res judicata can bar a *permissive* claim only "if prosecution of [such] claim would nullify or impair the rights of the party seeking preclusion under the first judgment." That is not the case here, she argues, because "FISC's right and interest to the [amount] awarded

in the 2018 consent judgment is not disputed or challenged" and has been "paid and fully satisfied by Ms. Bell[,]" such that FISC's rights or interest in the "satisfied judgment" would not be affected by pursuit of her claims in the instant matter. Ms. Bell urges us to hold that because the trial court's order "cannot be reconciled with *Smith*, the trial court erred."[1]

Ms. Bell further contends that FISC's "breach of contract action" was not based on the same transaction or occurrence as her "affirmative claims stemming from [FISC's] unlawful debt collection methods." Ms. Bell argues that the "factual nucleus" of her claims consists of "FISC's debt collection methods alleged to have violated DCMRs" as well as "FISC's false statements and omissions made to [her], to third parties and through affidavits relating to the amount owed and FISC's intentional and knowing business practice of converting legally uncollectable debts into valid judgments[,]" and that her claims do not rest on the

---

[1] Ms. Bell also argues that FISC failed to "*argue and prove with evidence that FISC[']s rights or interest under the 2018 consent judgment would be nullified or impaired if this suit is permitted to go forward.*" She contends that FISC's failure in that regard meant that the trial court had "an inadequate basis to determine res judicata application to Ms. Bell's permissive claims and provides an independent basis for reversal." We are unpersuaded by this argument and see no need to discuss it further; for the reasons discussed *infra*, it is apparent from the face of many of Ms. Bell's allegations that they contradict the consent judgment and could negate it if allowed to proceed.

installment contract that she asserts "[wa]s the basis for the 2018 consent judgment."

Ms. Bell additionally argues that the 2018 consent judgment, which is asserted as the basis for the res judicata bar, "is silent on waiver or relinquishment of [her] consumer protection claims." She argues that because she did not waive her rights under consumer protection laws when she entered into the settlement agreement on which the consent judgment was based, the consent judgment cannot be a basis for precluding her consumer protection claims.

FISC defends the trial court's res judicata ruling and further argues that Maryland law, rather than District of Columbia consumer protection laws, applied to Ms. Bell's contract, undermining the premise of her entire case and providing an alternate basis to uphold the trial court's dismissal ruling.[2] We address these arguments in turn, beginning with FISC's argument about the applicability of District of Columbia law, an argument that if successful would obviate the need to address Ms. Bell's statutory claims.

---

[2] FISC also made this argument in its motion to dismiss, but the trial court did not rule on this issue.

## II.     Standard of Review

We review the "dismissal of a claim pursuant to a 12(b)(6) motion de novo, 'presuming the complaint's factual allegations to be true and construing them in the light most favorable to [the plaintiff].'" *Calomiris v. Calomiris*, 3 A.3d 1186, 1190 (D.C. 2010) (quoting *Bleck v. Power*, 955 A.2d 712, 715 (D.C. 2008)). "To survive a motion to dismiss, a complaint must set forth sufficient facts to establish the elements of a legally cognizable claim." *Woods v. District of Columbia*, 63 A.3d 551, 552–53 (D.C. 2013). "In examining the sufficiency of the complaint, the court may consider the complaint itself and any documents it incorporates by reference [here, the RISC]." *Abdelrhman v. Ackerman*, 76 A.3d 883, 887 (D.C. 2013).

## III.     Analysis

### A.     The Applicability of District of Columbia Law

Citing this court's analysis in *Chamberlain v. Am. Honda Fin. Corp.*, 931 A.2d 1018 (D.C. 2007), FISC argues that Maryland law rather than District of Columbia law applied to the installment sales contract, with the result that Ms. Bell's AFRA, CPPA, and DCL claims are not cognizable. We conclude that the

factual record is insufficiently developed on this issue to permit us to determine whether Ms. Bell's statutory claims fail on this ground.

In *Chamberlain*, plaintiffs/appellants, who were District residents, purchased their vehicles in Maryland and financed their purchases through defendant/appellee American Honda Finance Corporation ("AHFC"), which repossessed their vehicles. *Id*. at 1019. Appellants argued that AHFC violated 16 D.C.M.R. § 341.5 (governing the storage of vehicles repossessed in the District) and § 342.2 (governing the fees associated with such repossession) and that these violations constituted unfair and deceptive trade practices, which violated the CPPA. *Id*. at 1020. The trial court concluded that Maryland law applied and dismissed appellants' amended complaint for failure to state a claim because it cited only District of Columbia statutes and regulations as a basis for relief. *Id*. at 1021. We affirmed the trial court's ruling. *Id*. We explained that the key issue was whether the regulations relied upon by appellants applied given that they did not purchase their vehicles within the District. *Id*. at 1024. We concluded as a matter of law that § 341.5 and § 342.2 did not apply. *Id*. at 1021.

Explaining that conclusion, we noted that "[a]ccording to their plain language, these two regulations apply only to 'holders[,]'" *id.* at 1024, defined

under 16 D.C.M.R. § 399.1 to include "any person legally or beneficially entitled to the proceeds of the instrument of security." We noted that under D.C. Code § 50–601(5) (2001), incorporated by reference in 16 D.C.M.R. § 399.1, an "instrument of security" "means any promissory note, *retail installment contract*, or other written promise to pay the unpaid balance of the total amount to be paid by a retail buyer of a motor vehicle." *Id.* (emphasis added) (quoting D.C. Code § 50–601(5)). We further noted the definition of a "retail installment contract," *id.* at 1024, which D.C. Code § 50–601(9) defines as:

> [A] contract entered into in the District or entered into by a seller licensed or required to be licensed by the District evidencing a retail installment transaction pursuant to which the title to or a lien on, or security or a security interest in, the motor vehicle, which is the subject matter of the transaction, is retained or taken to secure, in whole or in part, the retail buyer's obligations.

Citing these provisions, we explained that "AHFC is not a 'holder' for purposes of these regulations unless the sales contracts were 'entered into in the District[,]'" which they were not. *Chamberlain*, 931 A.2d at 1024.[3] Rather, the sales contract established and appellants conceded that the vehicles were sold in Maryland. *Id.*

---

[3] We acknowledged that "[t]he definition [of 'retail installment contract'] also applies to 'a contract [of a specified nature] . . . entered into by a seller licensed or required to be licensed by the District[,]'" but explained that "[s]o far as appellants have informed us, this broader definition has no impact on this case." *Id.* at 1022 n.10.

Consequently, we held that the complaint failed to state a claim upon which relief could be granted since it did not "plead (either directly or inferentially) that AHFC is a 'holder'" and that it "thus fail[ed] to state a violation of § 341.5 or § 342.2."[4] *Id.* at 1025. We further held that because appellants failed to plead a violation of those regulations, they also failed to state a claim for violation of the CPPA. *Id.*

In the instant case, Ms. Bell's amended complaint does not indicate where the RISC was entered into, but the first page of the RISC, which is attached to FISC's motion to dismiss, lists a Maryland address for A&H Motors. It thus appears to be the case that, as FISC emphasizes, Ms. Bell's RISC was not entered into in the District.[5] However, as Ms. Bell argues, FISC, which apparently is the assignee of the RISC, could still qualify as a "holder" of a retail installment contract subject to §§ 341.5 and 342 if the dealer was a "seller licensed or required to be licensed by the District." Ms. Bell's amended complaint asserts that FISC is a holder and her reply brief asserts that the car dealer is registered as a domestic

---

[4] 16 D.C.M.R. Part 340 generally governs the rights and duties of holders repossessing vehicles.

[5] We refer to the retail installment sales contract found in the Superior Court record as "Ms. Bell's RISC," but we acknowledge that the name on the document included as an exhibit to FISC's motion to dismiss is "Mashur Calvetti Bell." We also note that an "Assignment of Contract" that is part of the same exhibit refers to a retail sales installment agreement with "Matthew L Mashun Calvetti Bell." These discrepancies are not explained in the record.

corporation in the District and that "[b]oth FISC and the dealer are sellers licensed and required to be licensed in the District[.]"  Taken to be true for purposes of FISC's motion to dismiss, the complaint's allegation that FISC was a holder defeats FISC's argument regarding the inapplicability of District consumer protection laws.  The Rule 12(b)(6) record does not enable us to say one way or the other whether Ms. Bell's allegation about FISC's holder status is actually correct, but we conclude for the foregoing reasons that the present record does not permit us to affirm the Superior Court's ruling on the ground that District of Columbia law is inapplicable.  We therefore proceed to consider the res judicata ruling.

## B. Res Judicata, Permissive vs. Compulsory Counterclaims, and the "Nullification Exception"

"[T]he doctrine of res judicata (claim preclusion)" dictates that "a final judgment on the merits of a claim bars relitigation in a subsequent proceeding of the same claim between the same parties or their privies."  *Patton v. Klein*, 746 A.2d 866, 869 (D.C. 1999).  The doctrine operates to bar in the subsequent proceeding "not only claims which were actually raised in the first, but also those arising out of the same transaction which could have been raised."  *Id.* at 870.  A consent judgment, such as the one involved here, "ordinarily support[s] claim

preclusion[.]" *Whiting v. Wells Fargo Bank, N.A.*, 230 A.3d 916, 927 (D.C. 2020) (quoting *Arizona v. California*, 530 U.S. 392, 414 (2000)). We review de novo the trial court's application of the doctrine of res judicata. *See Calomiris*, 3 A.3d at 1190; *Price v. Indep. Fed. Sav. Bank*, 110 A.3d 567, 571 (D.C. 2015).

As noted above, Ms. Bell asserts that the trial court erred in its res judicata analysis by failing to consider the "permissive counterclaim rule" as set out in *Smith*. Relatedly, she argues that pursuit of her permissive claims cannot nullify or impair FISC's rights or interest in the consent judgment because it has been paid and fully satisfied. We agree with Ms. Bell that her claims were permissive, but conclude that several of her causes of action are precluded under the doctrine of res judicata because they would nullify or impair FISC's rights under the Small Claims Branch judgment.

### 1. The Nature of Ms. Bell's Claims

In *Smith*, we addressed the question of whether res judicata barred a tenant's counterclaim for rent abatements for 2012 and 2013, which the tenant sought to raise in her landlord's 2015 action for possession due to non-payment of rent, but which she had not raised in her landlord's prior actions in 2012 and 2013 for non-

payment of rent for two months in each of those years. 150 A.3d at 1267. We held that the tenant's counterclaim was not barred with respect to months during 2012 and 2013 that were not covered by the prior judgments. *Id.* We reached that result by first recognizing that, by rule, tenant claims in the Landlord Tenant ("L&T") Branch are permissive and not compulsory.[6] *Id.* at 1267, 1277 (citing L&T Branch Rule 5(b)).[7] We then considered whether res judicata principles may apply in the context of a permissive counterclaim. *Id.* at 1275. "Because this court ha[d] no precedent squarely on point, we turn[ed] to § 22 of the RESTATEMENT (SECOND) OF JUDGMENTS" to resolve the question of whether res judicata precluded the tenant from filing her counterclaim in her landlord's then-current suit. *Id.* We explained that the "limit on a permissive counterclaim in a later action is embodied in §

---

[6] As we have explained, "a compulsory counterclaim . . . must be filed at the time of the filing of the appropriate pleading [such as an answer] or it is lost forever." *Bronson v. Borst*, 404 A.2d 960, 963 (D.C. 1979); *see also Firemen's Ins. Co. v. L. P. Steuart & Bro., Inc.*, 158 A.2d 675, 677 (D.C. 1960) (quoting *United States v. Eastport S. S. Corp.*, 255 F.2d 795, 805 (2d Cir. 1958) ("[W]henever a compulsory counterclaim is not pleaded in an action when it should have been pleaded[,] the judgment entered in that action is clearly *res judicata* as to the merits of the unpleaded counterclaim.")).

[7] We explained that this is "because the regulatory goal is to safeguard the summary, expeditious nature of the action for possession due to nonpayment of rent, so that a landlord will not have a prolonged wait for any rent payments that are due[,]" and "[s]imultaneously, the regulatory goal is to avoid summarily cutting off the right of a tenant to assert specified defenses and counterclaims due to the condition of the premises or the landlord's actions." *Id.* at 1275.

22(2)(b) of the Restatement, the 'nullification exception.'"[8]  *Id.* at 1274. Summarizing this exception, we explained that under § 22(2)(b), "a permissive counterclaim will not be allowed if success on the counterclaim 'would nullify the initial judgment or would impair rights established in the initial action.'"  *Id.* (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 22 (1982)).  We then concluded that the tenant's judgment on her counterclaim would not nullify the landlord's 2012 and 2013 judgments for months covered by those judgments, or impair rights established in those actions.  *Id.* at 1276.  We explained that the landlord's right to the four months of full rent awarded for 2012 and 2013 could

---

[8] Section 22(2) provides:

> A defendant who may interpose a claim as a counterclaim in an action but fails to do so is precluded, after the rendition of judgment in that action, from maintaining an action on the claim if:
>
> (a)  The counterclaim is required to be interposed by a compulsory counterclaim statute or rule of court, or
>
> (b)  The relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action.

Restatement (Second) of Judgments § 22(2)(a), (b).

Section 22(1) provides that "[w]here the defendant may interpose a claim as a counterclaim but he fails to do so, he is not thereby precluded from subsequently maintaining an action on that claim, except as stated in Subsection (2)."

not be extended to other months in 2012 or 2013 to cut off any right the tenant may have to rent abatements for those months. *Id.*

Taking an analytical approach similar to the one we followed in *Smith*, we look to the rules governing counterclaims in the Small Claims Branch, where FISC brought its initial suit. Rule 1 of the Superior Court Rules of Civil Procedure provides that these rules "govern the procedure in all civil actions and proceedings in the Civil Division of the Superior Court of the District of Columbia, with the exception of cases in the Landlord and Tenant Branch and the Small Claims and Conciliation Branch . . . ." Super. Ct. Civ. R. 1. The comment to Rule 1 recognizes that "the separate Rules for those respective branches do designate certain of these Rules for incorporation by reference therein." Super. Ct. Civ. R. 1 cmt.[9] In the Small Claims Branch, this designation is made under Rule 2 of the Superior Court Rules of Procedure for the Small Claims Branch, entitled "Applicability of Certain Superior Court Rules of Civil Procedure." Super. Ct. Sm. Cl. R. 2. Of relevance here, Rule 2 specifically excludes from the list of rules applicable to the Smalls Claims Branch, Super. Ct. Civ. R. 13 ("Counterclaim and Crossclaim"), which is the general civil rule that provides that a pleading "must

---

[9] *See also Davis v. Winfield*, 664 A.2d 836, 838 (D.C. 1995) ("The rules governing the Small Claims Branch make certain Superior Court Rules of Civil Procedure applicable in small claims proceedings.").

state as a counterclaim any claim that . . . the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." Super. Ct. Civ. R. 13.

Super. Ct. Civ. R. 13 not being applicable, Super. Ct. Sm. Cl. R. 5 sets forth the only direct requirement made with respect to counterclaims in the Small Claims Branch. Rule 5 states that "[n]o party is required to file an answer, plea, or defense in writing, except to assert a set-off or counterclaim" and that "[a]ll pleadings must be construed so as to do justice." Super. Ct. Sm. Cl. R. 5. While this rule specifies that counterclaims must be in writing, it does not make them compulsory. Thus, based on our review of the rules applicable to counterclaims in the Small Claims Branch, we conclude that counterclaims are not compulsory in this context.[10] Consequently, we find that counterclaims that Ms. Bell might have asserted in FISC's small claims action were permissive.

### 2. *Applicability of the Nullification Exception*

---

[10] *See Weaver v. Grafio*, 595 A.2d 983, 987 n.2 (D.C. 1991) ("Appellants correctly note that because there is not a compulsory counterclaim rule in the Small Claims Branch, they cannot be penalized for failing to raise a counterclaim.").

Having concluded that Ms. Bell's claims were permissive in FISC's suit, we now examine the applicability of the nullification exception, which would bar her claims if success on them would nullify FISC's initial judgment or impair its rights under that judgment.[11]  With respect to Ms. Bell's first and second causes of action, which allege violations of the AFRA and the CPPA, we conclude that these claims are barred in part by the nullification exception.  We also find that her fourth cause of action (abuse of process) is barred by the nullification exception.  As to her third and fifth causes of action, these claims were properly dismissed for other reasons that we explain below.

---

[11] As described above, Ms. Bell also argues that the breach of contract claim that was the basis of FISC's Small Claims Court action did not relate to the same transaction or occurrence as her allegations related to FISC's unlawful debt collection methods.  Had we not determined as a matter of law on other grounds that Ms. Bell's (potential) counterclaims were not compulsory, that would be an appropriate test to determine whether the claims were actually compulsory and thus whether res judicata principles apply on that basis.  *See* Super. Ct. Civ. R. 13 (compulsory counterclaim rule providing generally that a pleading "must state as a counterclaim any claim that . . . arises out of the transaction or occurrence that is the subject matter of the opposing party's claim").  However, Restatement § 22(2)(b) does not make the nullification exception dependent on whether a claim relates to the same transaction or occurrence as an adjudicated claim.  And, in any event, we have said that the doctrine of res judicata "operates to preclude assertion of all rights of [one party] to remedies against the [other party] with respect to all or any part of the transaction, *or series of connected transactions*, out of which the action arose."  *Whiting*, 230 A.3d at 927 (italics added, internal quotation marks omitted) (quoting *Washington Med. Ctr., Inc. v. Holle*, 573 A.2d 1269, 1281 (D.C. 1990)).

Ms. Bell argues that her "affirmative claims stemming from [FISC's] debt collection methods . . . are independent stand-alone tort claims giving rise to statutory damages." She asserts that she does not dispute or challenge FISC's right to the sum of money awarded in the 2018 consent judgment, which has been "paid and fully satisfied[.]" We conclude to the contrary that many of the factual allegations set out in Ms. Bell's Amended Complaint do challenge FISC's right to the sum awarded to it in the 2018 judgment. To start, in a section of her complaint entitled "FISC's Policies and Practices," which is incorporated by reference in the other counts of the complaint, Ms. Bell disputes the validity of the debt claimed by and awarded to FISC. She asserts that it is the "standard policy and practice" of FISC to (1) "falsely represent the character, amount or legal status of debt"; (2) "fail to advise unrepresented consumers such as the Plaintiff that they have no right to the deficiency amount sought"; (3) "attempt to collect, collect or to file lawsuits on deficiency-barred debt"; and (4) "misrepresent to consumers that they are obligated to pay the deficiency amount." She also states that FISC "failed to provide members of the proposed class all of the information and disclosures relating to repossession and collection of a deficiency amount under 16 D.C.M.R. § 340.5 [providing that "[a] deficiency does not arise unless the holder has complied with all of the requirements of §§ 340 through 349, including the

mandatory and discretionary notice requirements set forth in § 341"]." We conclude that to the extent that Ms. Bell's claims rest on these allegations — all of which in essence assert that FISC was not entitled to collect the deficiency amount reflected in the 2018 judgment, and thus challenge FISC's right to the funds the court awarded — allowing her to pursue and prevail on these claims would nullify the judgment in favor of FISC. *Cf. Smith*, 150 A.3d at 1276; *see also Fairfax Sav., F.S.B. v. Kris Jen Ltd. P'ship*, 655 A.2d 1265, 1280 (Md. 1995) (ordering reinstatement of trial court ruling that plaintiffs' "[a]llegations that there was no foreclosure-triggering default" were precluded, and had to be "culled from [p]laintiffs' second amended complaint," because they "negate, contradict, and in that sense nullify an essential foundation for the foreclosure judgment" that had been obtained by the defendant).[12]

---

[12] Our reasoning in *Smith* provides a sufficient answer to Ms. Bell's argument that the settlement agreement and ensuing consent judgment did not entail a waiver of the rights she enjoys as a consumer under the AFRA, CPPA, and DCL. Under the rationale of *Smith*, Ms. Bell cannot be deemed to have waived causes of action under these statutes to the extent that the causes of action do not squarely conflict with the ruling that FISC was entitled to the deficiency amount specified in the consent judgment. But her claim that FISC had "no right to the deficiency amount sought" and similar claims would nullify the consent judgment if allowed to proceed and therefore are foreclosed on the basis of res judicata under the nullification exception. *See A.S. Johnson Co. v. Atlantic Masonry Co.*, 693 A.2d 1117, 1121 n.4 (D.C. 1997) (explaining that res judicata would apply if a "new action [i]s, fundamentally, an attack on the validity of [a] prior judgment").

We reach a different conclusion about Ms. Bell's other allegations regarding FISC's "material violations of the AFRA." As part of her first cause of action, she alleges that the statutory notice issued by FISC in connection with repossession of her motor vehicle does not contain the disclosures and information mandated by the AFRA regulations and "contains other defects and omissions." *See* 16 D.C.M.R. § 342.2. More specifically, she alleges that she was "never notified that FISC intended to repossess the [v]ehicle[,]" was "never notified that the [v]ehicle had been repossessed[,]" and was not notified regarding where she could recover her personal belongings that were in the vehicle. *See, e.g.,* 16 D.C.M.R. § 341.3 (providing that "[i]f the default consists solely of the buyer's failure to make one (1) or more installment payments due under the instrument of security, and the default is not more than fifteen (15) days past due, then the holder must deliver to the buyer [a] notice of intended repossession"); 16 D.C.M.R. § 341.4 (providing that "[w]ithin five (5) days after a motor vehicle has been repossessed, the holder shall deliver to the buyer . . . a written notice" stating, inter alia, "[t]he exact address where the vehicle is stored"). Unlike Ms. Bell's claims attacking the validity of the debt itself, Ms. Bell's allegations related to the notice required under 16 D.C.M.R. Part 341 challenge the process by which FISC went about repossessing her vehicle. Therefore, allowing Ms. Bell to pursue her claims under these provisions would not appear to nullify the deficiency judgment (even though

defending against the claims presumably will cost FISC some money).  Even if there were to be an award of damages associated with these procedural claims, per our reasoning in *Smith*, such a monetary impact on FISC would not constitute the type of nullification or impairment of judgment contemplated by Restatement § 22(2)(b).  Accordingly, we conclude that the trial court erred in dismissing Ms. Bell's repossession-process claims on the basis of res judicata.[13]

It was also error to dismiss Ms. Bell's second cause of action in its entirety on res judicata grounds.  Her second cause of action alleges that FISC violated the CPPA.  Some portions of the CPPA cause of action were properly dismissed; for example, Ms. Bell's allegations that FISC "misrepresent[ed] that consumers are obligated to pay deficiency balances or that the debt is viable" and "collect[ed] barred deficiency amounts" challenge the validity of the debt FISC claimed was due and owing in its Small Claim Court complaint and the amount FISC was awarded by that court under the 2018 consent judgment.[14]  But insofar as Ms. Bell

---

[13] We reach no conclusion about whether Ms. Bell's AFRA notice claims might be subject to dismissal on some other ground.

[14] *Cf. A.B.C.G. Enters., Inc. v. First Bank Se., N.A.*, 515 N.W.2d 904, 910-11 (Wis. 1994) (holding that where prior default judgments established that ABCG was in default on its mortgage obligation and established the amount at issue in the mortgages, a judgment in favor of ABCG on its allegations that the mortgage obligation was not valid and that First Bank's foreclosure was improper, and on its

(continued…)

asserts that FISC "violated the CPPA by failing to comply with [the notice requirements of] Title 16 of the AFRA[,]" the claim does not appear to effect nullification of the consent judgment.

In terms of her fourth cause of action (abuse of process), Ms. Bell alleges that FISC "instituted a lawsuit . . . in order to coerce Ms. Bell to pay an alleged debt that they were not owed[.]" She also alleges that FISC "abused the repossession process by signing a fraudulent affidavit stating that the deficiency amount sought 'is a just and true statement of the amount owing by the defendant to the plaintiff, exclusive of all set-offs and just grounds for defense.'" These claims challenge the validity of the amount claimed by FISC and the judgment it obtained against Ms. Bell and, we agree with the Superior Court, are barred by res judicata.

## C. The Remaining Causes of Action

---

(…continued)
attempt to put the amount at issue again, "would . . . directly undermine the original default judgment" and res judicata therefore applied).

We conclude that Ms. Bell's third cause of action (violation of the DCL) was properly dismissed because it fails to "set forth sufficient facts to establish the elements of a legally cognizable claim." *Woods*, 63 A.3d at 552-53. This section of the complaint merely recites what the DCL prohibits; it provides no information regarding how, as Ms. Bell states as a bald conclusion, FISC violated D.C. Code §§ 28-3814(f) or (g). *See Close It! Title Servs., Inc. v. Nadel*, 248 A.3d 132, 138 (D.C. 2021) (explaining that a plaintiff "must plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged'" (quoting *Potomac Dev. Corp. v. District of Columbia*, 28 A.3d 531, 544 (D.C. 2011)); *Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1129 (D.C. 2015) ("'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice,' and 'unadorned, the-defendant-unlawfully-harmed-me accusation[s]' also are insufficient." (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Poola v. Howard Univ.*, 147 A.3d 267, 276 (D.C. 2016) ("A complaint does not 'suffice if it tenders naked assertion[s] devoid of further factual enhancement.'" (quoting *Iqbal*, 556 U.S. at 678)).

Similarly, we conclude that Ms. Bell's fifth cause of action (defamation) was properly dismissed because Ms. Bell did not set forth sufficient factual allegations to support the claim. In this jurisdiction, a plaintiff must allege the following

elements to state a cause of action for defamation: "(1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm." *Oparaugo v. Watts*, 884 A.2d 63, 76 (D.C. 2005) (internal quotation marks omitted). In her complaint, Ms. Bell simply asserts that "[u]pon information and belief, FISC made false statements to credit reporting agencies regarding the instant Repossession" and that she "suffered harm to her reputation and her credit standing" as a result. These allegations do not describe the substance of the alleged defamatory statements or identify the respect in which they were false, and thus do not state a plausible claim of defamation. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[,]" and the "factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bereston v. UHS of Del., Inc.*, 180 A.3d 95, 99 (D.C. 2018) (brackets and internal quotation marks omitted); *cf. Crowley v. N. Am. Telecomms. Ass'n*, 691 A.2d 1169, 1172 (D.C. 1997) (reversing trial court's dismissal of defamation claim because appellant's complaint contained

the substance of the alleged defamatory statement and the date and identification by employment of the persons to whom the statements were allegedly made).

For the foregoing reasons, we affirm the dismissal of Ms. Bell's third, fourth and fifth causes of action, reverse the dismissal of her first and second causes of actions, and remand for further proceedings consistent with this opinion.

*So ordered.*