# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 18, 2025          Decided July 8, 2025

No. 24-7027

DARIAN MCKINNEY,
APPELLANT

v.

DISTRICT OF COLUMBIA,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:22-cv-02137)

———

*Leslie McAdoo Gordon* argued the cause and filed the briefs for appellant.

*Holly M. Johnson*, Senior Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for appellee. With her on the brief were *Brian L. Schwalb*, Attorney General, *Caroline S. Van Zile*, Solicitor General, *Ashwin P. Phatak*, Principal Deputy Solicitor General, and *Thais-Lyn Trayer*, Deputy Solicitor General.

Before: PILLARD and PAN, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* PAN.

Opinion concurring in part and dissenting in part filed by *Circuit Judge* PILLARD.

PAN, *Circuit Judge*: Appellant Darian McKinney was employed by the District of Columbia Public Schools ("DCPS") as a health and physical-education teacher for four years. During his tenure, DCPS investigated him for sexual harassment, and he filed a grievance against DCPS. The parties resolved both disputes by entering a Settlement Agreement. As part of the deal, McKinney resigned from DCPS, with the understanding that he was eligible to reapply for teaching positions in the D.C. public school system. When McKinney reapplied, however, DCPS blocked him from returning because he allegedly failed a background check.

McKinney sued the District of Columbia, alleging that DCPS breached the Settlement Agreement by not fairly considering his employment applications. He further claimed that DCPS deprived him of property and liberty without due process of law. The district court dismissed his Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). We affirm.

## I.

### A. Factual Background[1]

McKinney is certified to teach health and physical education in D.C. and in Maryland. When DCPS hired him in

---

[1] "Because this case comes to us at the pleading stage, we assume the truth of the facts alleged in the operative complaint." *DeVillier v. Texas*, 144 S. Ct. 938, 941 n.1 (2024).

2015, he initially failed a background check. But he appealed that decision and prevailed. He then taught in D.C. public schools without incident for three years, from fall 2015 to spring 2018.

During the 2018 school year, DCPS conducted a new background check on McKinney. The background check was prompted by an "event" that the Complaint does not describe in any detail. Compl. ¶ 16. Around the same time, "a separate dispute" arose between McKinney and DCPS, which McKinney litigated administratively. *Id.* ¶ 17.

In the summer of 2019, McKinney interviewed for a teaching job at Kelly Miller Middle School, a DCPS school. He received and accepted an offer. But then, the Career Office advised McKinney that he had failed a background check and thus was ineligible to be hired. Once again, McKinney successfully appealed the background-check determination. By the time the issue was resolved, however, the position at Kelly Miller was no longer available.

McKinney and DCPS then entered a Settlement Agreement in the fall of 2019, under which McKinney agreed to resign from DCPS and DCPS agreed to remove any reference to a "substantiated sexual harassment allegation" from his personnel folder. The Settlement Agreement resolved "any and all claims which may arise or have arisen from [McKinney's] separation of employment from DCPS . . . including, but not limited to, all claims in Mr. McKinney's grievance . . . related to Mr. McKinney's separation from

DCPS and any related substantiated sexual harassment allegations." Settlement Agreement 1 (J.A. 24).[2]

Under the Settlement Agreement, McKinney was deemed "excessed" pursuant to his union's Collective Bargaining Agreement, meaning that DCPS eliminated his position.[3] A teacher who is "excessed" before qualifying for retirement benefits normally has two options: (1) He may take a $25,000 buyout and surrender his eligibility for reemployment with DCPS for three years; or (2) he may remain employed for an additional year, during which time he may seek to secure reemployment by DCPS that would allow him to incur no break in service for pension purposes. McKinney, however, negotiated favorable terms that got him the best of both worlds: He received a $25,000 buyout without foregoing eligibility for reemployment for three years. Instead, he was "allowed to apply for teaching positions at DCPS starting the 2020–2021 school year." Settlement Agreement 1 (J.A. 24). If he were rehired within a year of signing the Agreement, McKinney would be treated as having no break in service for purposes of his pension benefits, salary eligibility, and forfeited sick leave.

In July 2020, McKinney interviewed for a new teaching position at Kelly Miller, and received an offer, which he accepted. But the Career Office informed McKinney that he was ineligible to be hired because he had failed the background check. McKinney alleges that no background check actually

---

[2]   The Settlement Agreement is before us because it was "incorporated in the complaint." *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020).

[3]   The parties agree that the court may properly consider the Collective Bargaining Agreement as a matter of public record. *See Kaspersky Lab, Inc. v. Dep't of Homeland Sec.*, 909 F.3d 446, 464 (D.C. Cir. 2018).

took place at that time, and that "no legitimate basis" existed for him to fail one. Compl. ¶ 36. McKinney "attempted to appeal the alleged August 2020 'failed' background check in the same manner as he had appealed the earlier background check determinations." *Id.* ¶ 37. But, unlike before, he did not receive a written notice about the failed background check, with instructions about his appellate rights and how to appeal. Although he "repeatedly contacted DCPS requesting to appeal," "DCPS never responded." *Id.* ¶¶ 48–49.

In early 2021, McKinney applied for additional DCPS teaching positions for the 2021 school year. He did not receive an interview, let alone an offer. But the Career Office nevertheless informed him that he was ineligible for employment due to a failed background check. Again, he received no mailed written communication. McKinney contacted DCPS to appeal the allegedly failed background check but was ignored.

In the spring of 2021, McKinney applied for yet another teaching position with DCPS, this time at Eliot Hine Middle School. He interviewed for the job, received an offer, and accepted. But once more, the Career Office informed him that he had failed the background check. He attempted to appeal "by requesting that DCPS provide him with the appropriate materials to appeal" but received no response. Compl. ¶¶ 69–70.

McKinney never secured a new job with DCPS. He alleges that no background check was ever conducted after his separation from DCPS and that his failure to be rehired therefore cannot be attributed to failing any background check. Instead, he claims, "DCPS personnel were instructed by DCPS personnel with authority over them not to effectuate the hiring of Mr. McKinney." Compl. ¶ 76. He asserts that, absent the

"bad-faith run-around from DCPS," he "would have been hired in 2020 and 2021 by DCPS" and would have taught in the D.C. public school system for the rest of his career. *Id.* ¶¶ 74–75, 84–85.

Today, McKinney teaches and coaches at a public school in Prince George's County, Maryland. But he believes that DCPS unlawfully deprived him of the higher salary and other perks that he would have received as a DCPS teacher. Another year as a DCPS teacher would have entitled him to a pension, retirement eligibility, forfeited sick leave, and other benefits.

## B. Procedural History

McKinney filed suit against the District of Columbia. First, he alleged breach of contract, claiming that DCPS violated the Settlement Agreement's "implied covenant of good faith and fair dealing, by falsely claiming that Mr. McKinney 'failed' the DCPS background check, and by not permitting him to appeal that alleged failure." Compl. ¶¶ 102–07. Second, McKinney asserted that DCPS's fabrications about the background check deprived him of property without due process of law. Third, he contended that DCPS deprived him of liberty without due process "by falsely labeling him as someone who presents a danger to children and youth, and who is ineligible to teach in D.C." *Id.* ¶¶ 114–15.

The district court granted the government's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). The district court ruled that McKinney failed to state a claim for breach of contract because "the plain terms of the parties' Settlement Agreement do not create any obligation or duty for the District to rehire the plaintiff." *McKinney v. District of Columbia*, No. 22-cv-2137, 2024 WL 358229, at *4 (D.D.C. Jan. 31, 2024). The district court also held that McKinney had

not stated a due process claim, based on either a property interest or a liberty interest. *Id.* at \*5–6.

McKinney timely appealed. We have jurisdiction under 28 U.S.C. § 1291.

## II.

### A. Standard of Review

We review the district court's dismissal of the complaint *de novo*. *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012). "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

### B. Breach of Contract

McKinney contends that DCPS breached the Settlement Agreement's implied covenant of good faith and fair dealing, and that his Complaint properly stated that claim. According to McKinney, DCPS had an obligation to consider his employment applications fairly and in good faith, based on the Agreement's provision that he would "be allowed to apply for teaching positions at DCPS starting the 2020–2021 school year." Settlement Agreement 1 (J.A. 24). We agree with the district court that McKinney misinterprets what was required under the Settlement Agreement.

"Settlement agreements and releases are contractual in nature and are interpreted under the same rules as contracts." *Grand Hyatt Wash. v. D.C. Dep't of Emp. Servs.*, 963 A.2d 142, 146 (D.C. 2008). The parties do not dispute that the contract at issue here is governed by D.C. law. The D.C. Court of Appeals follows "the 'objective law' of contract

interpretation," according to which "the written language of a contract governs the parties' rights unless it is not susceptible of clear meaning." *Patterson v. District of Columbia*, 795 A.2d 681, 683 (D.C. 2002). "[I]n deciding whether the contract language is susceptible of clear meaning," the court has explained, "we look to the contract language itself, and ask ourselves generally what a reasonable person in the position of the parties would have thought the disputed language meant." *Id.* (cleaned up). A reasonable person "is presumed to know all the circumstances before and contemporaneous with the making of the agreement." *Id.* (cleaned up).

Under D.C. law, "[e]very contract contains an implied covenant of good faith and fair dealing." *Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1133 (D.C. 2015). This covenant "precludes any party from doing anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Id.* (cleaned up). When determining whether the covenant has been breached, "[a]s an initial matter, [the court] must review the terms of the contract at issue." *Id.* "The implied duty of good faith imposes an obligation on a contracting party not to evade the spirit of the contract, willfully render imperfect performance, or interfere with performance by the other party, but it does not require a party to waive or rewrite the terms of the contract." *Sibley v. St. Albans Sch.*, 134 A.3d 789, 806 (D.C. 2016) (cleaned up).

The covenant of good faith and fair dealing encompasses only the parties' reasonable and justified expectations. *See Allworth v. Howard Univ.*, 890 A.2d 194, 201–02 (D.C. 2006) ("Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party[.]" (quoting Restatement (Second) of Contracts § 205 cmt. a (Am. L. Inst. 1981))). Thus, courts look to whether "reasonable

persons in the parties' shoes would have expected the contract to be performed as it was." *Adler v. Abramson*, 728 A.2d 86, 90–91 (D.C. 1999). Whether an expectation is reasonable or justified may be informed by institutional "custom and practice." *Cf. Howard Univ. v. Roberts-Williams*, 37 A.3d 896, 906 (D.C. 2012) ("The objective view of contract interpretation adopted in this jurisdiction requires, in the context of University employment contracts, that the custom and practice of the University be taken into account in determining what were the reasonable expectations of persons in the position of the contracting parties." (cleaned up)); *see also Greene v. Howard Univ.*, 412 F.2d 1128, 1135 (D.C. Cir. 1969) ("Contracts are written, and are to be read, by reference to the norms of conduct and expectations founded upon them.").

McKinney argues that DCPS breached the implied covenant of good faith and fair dealing because the Settlement Agreement's provision that "allowed" him to "apply for teaching positions" necessarily obligated DCPS to fairly consider any employment applications that he submitted. Settlement Agreement 1 (J.A. 24). Any contrary reading, he contends, would preclude him from enjoying the "fruits" of the contract. *Sundberg*, 109 A.3d at 1133. He alleges that DCPS blocked his rehiring in bad faith and falsely claimed that he failed the background check. But McKinney's demand for "fair consideration" of his employment applications has no basis in the contract's language or in the law.

We first consider the terms of the contract. The Settlement Agreement says only that McKinney is "allowed to apply for teaching positions" and is silent about how DCPS must handle his applications. Settlement Agreement 1 (J.A. 24). The provision's evident purpose was to exempt McKinney from the Collective Bargaining Agreement's buyout disqualification, which otherwise would have rendered McKinney ineligible for

employment with DCPS for three years because he had accepted the $25,000 buyout. The plain words of the contract are "susceptible of clear meaning": They do not entitle McKinney to "fair consideration" of subsequent applications for teaching positions. *Patterson*, 795 A.2d at 683.

Nor do "custom and practice" support a reasonable and justified expectation of "fair consideration." *Roberts-Williams*, 37 A.3d at 906. As McKinney's counsel conceded at oral argument, the District has no general duty to review employment applications tendered by job-seekers, much less to do so in a way that McKinney considers "fair." Indeed, we know of no precedent or norm that requires the D.C. government to consider — fairly or not — the candidacies of all would-be employees. It is thus unreasonable and unjustified for McKinney to expect special treatment from the District in its consideration of his post-settlement employment applications, especially when his expectation is based solely on a contract provision that facially gives him only a right to apply. The District surely does not act in bad faith when it adheres to the contract's plain language and treats McKinney no worse than it is allowed to treat other applicants. If McKinney wanted DCPS to commit to giving his applications "fair consideration," he should have negotiated for that additional benefit and memorialized it in the Settlement Agreement.

In sum, context and custom confirm the plain meaning of the Settlement Agreement's provision that "allowed" McKinney "to apply for teaching positions." Settlement Agreement 1 (J.A. 24). DCPS indisputably "allowed" McKinney to submit applications for numerous teaching positions after the settlement, and he even received job offers from Kelly Miller and Eliot Hine. DCPS's alleged failure to fairly consider his applications in the later stages of the hiring

process was beyond the scope of the Agreement. McKinney thus got the benefit of what he bargained for. DCPS "allowed" him "to apply," gave him a $25,000 buyout, and removed from his employment record any reference to "substantiated sexual harassment allegations." *Id.* McKinney may not "rewrite the terms of the contract" to also claim a right to "fair consideration" of his employment applications, simply by invoking the implied covenant of good faith and fair dealing. *Sibley*, 134 A.3d at 806. Accordingly, McKinney's factual allegations fail to state a breach-of-contract claim.

We respectfully disagree with the analysis of our dissenting colleague. *See* Dissent 2–6. Our colleague discusses several provisions of the D.C. Code that require DCPS to conduct a criminal background check before hiring an employee. *See* Dissent 1–2. She would hold that those statutory provisions "form a part of the contract as fully as if they had been expressly referred to or incorporated in its terms." *Id.* at 4 (quoting *Washington v. District of Columbia*, 137 A.3d 170, 177 (D.C. 2016) (cleaned up)). And she believes that McKinney plausibly alleges that DCPS violated those incorporated statutory requirements. We see three problems with our colleague's theory.

First, McKinney does not make the argument that our colleague so skillfully explicates: He does not mention the statutes that she relies upon, and his opening brief does not cite the D.C. Code even once. Thus, a claim that the Settlement Agreement incorporated D.C. Code provisions is not properly before us. *See Narragansett Indian Tribe v. Nat'l Indian Gaming Comm'n*, 158 F.3d 1335, 1338 (D.C. Cir. 1998) ("[W]e ordinarily do not entertain arguments not raised by parties[.]").

Second, our colleague appears to misapprehend the purpose of the cited statutory provisions: They do not confer judicially enforceable "fair consideration" rights on job applicants. Instead, they are intended to ensure the safety of children. The statutes in question provide that the District must conduct a background check before hiring a teacher. *See* D.C. Code §§ 4-1501.03(a)(1) (requiring that "[a]n applicant who is under consideration for paid employment by a covered child or youth services provider" "shall apply for [a] criminal background check[]"); 4-1501.02(3) (defining "covered child or youth services provider"); 4-1501.03(e) (providing that "[a]n applicant for a position at a covered child or youth services provider may be offered employment contingent upon receipt of a satisfactory background check"). The purpose of such a background check is to ensure that the District does not hire a teacher who is a danger to children. *See id.* § 4-1501.05a(a) ("The information obtained from the criminal background check shall not create a disqualification or presumption against employment or volunteer status of the applicant unless the Mayor determines that the applicant poses a present danger to children or youth."). Thus, the cited statutes do not entitle job-seekers to demand background checks as part of a "fair consideration" of their employment applications.[4]

Third, our task here is to interpret a contract term that "allowed" McKinney "to apply" for teaching positions. Settlement Agreement 1 (J.A. 24). In this context,

---

[4]  An applicant who "is denied [employment] because the applicant presents a present danger to children or youth" is entitled to appeal that outcome to the D.C. Commission on Human Rights. D.C. Code § 4-1501.05a(c). But McKinney's claim does not fall under this provision: The dangerousness determination must be based on information from a background check, *id*. § 4-1501.05a(a), and McKinney claims that no background check was conducted at all.

it is quite a leap to conclude that the contract not only incorporated a statutory safety scheme that had nothing to do with the settlement, but also refashioned the safety provisions into a bestowal of fair-consideration rights on job-seekers. Our colleague recognizes a newly created right for certain D.C. employment applicants to demand a background check, and then allows enforcement of that right through a contract provision that says only that McKinney will "be allowed to apply" for teaching positions. *Id.* Although our colleague acknowledges that the Settlement Agreement "does not guarantee McKinney more process . . . than any other applicant," Dissent 4, no precedent or authority suggests that any other unsuccessful job applicant has ever sued the District for an alleged failure to conduct a background check. In short, we do not agree that our colleague's theory is the best interpretation of the contract before us.

## C. Procedural Due Process (Property Interest)

McKinney also claims that DCPS deprived him of three property interests without due process of law: (1) his "interest in his original DCPS job"; (2) his "interest in the jobs at Kelly Miller and Eliot Hine," which were offered to him before he was stymied by the allegedly failed background checks; and (3) his "interest in his eligibility for the DCPS positions for which he applied." McKinney Br. 18–24. Each theory fails.

In some circumstances, the Constitution protects a person's property interest in governmental employment. The Due Process Clause of the Fifth Amendment guarantees that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. This clause applies to the government of the District of Columbia. *See Wash. Legal Clinic for the Homeless v. Barry*, 107 F.3d 32, 36 (D.C. Cir. 1997). "But, to determine whether due process

requirements apply in the first place, we must look not to the 'weight' but to the nature of the interest at stake." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 570–71 (1972) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). For a deprivation of property to be actionable, a person must have a "constitutionally protected property interest." *Wash. Legal Clinic*, 107 F.3d at 36 (citing *Brock v. Roadway Express, Inc.*, 481 U.S. 252, 260 (1987), and *Roth*, 408 U.S. at 569). "Property interests . . . are not created by the Constitution" itself; "[r]ather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Roth*, 408 U.S. at 577.

A property interest in a benefit, such as governmental employment, is constitutionally protected only when a person has "a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577. An "abstract need or desire for it" or "a unilateral expectation of it" does not suffice. *Id*. Thus, "[t]o determine whether [a person] had a property interest in" governmental employment, "we ask if he had a legitimate expectation, based on rules (statutes or regulations) or understandings (contracts, expressed or implied)," that he would receive or keep that employment. *Hall v. Ford*, 856 F.2d 255, 265 (D.C. Cir. 1988); *see also Carducci v. Regan*, 714 F.2d 171, 176 (D.C. Cir. 1983) (noting that a due process claim may involve "the act of hiring or the continuing employment relationship with the government").

### 1.   McKinney's Original Job with DCPS

McKinney asserts for the first time on appeal that DCPS "inveigled [him] to resign by making contractual promises that it then ignored." McKinney Br. 18–19. Because McKinney did not include that claim in his Complaint or in any of his briefing before the district court, and because he identifies no

15

exceptional circumstances to excuse that failure, the claim is forfeited. *Gov't of Manitoba v. Bernhardt*, 923 F.3d 173, 179 (D.C. Cir. 2019) ("Absent exceptional circumstances, a party forfeits an argument by failing to press it in district court."). We therefore decline to address it.

## 2.  McKinney's Contingent Job Offers

McKinney does not adequately allege a property interest in the jobs that he was conditionally offered at Kelly Miller and Eliot Hine Middle Schools.[5]  "[O]rdinarily there is of course no 'legitimate claim of entitlement,' . . .  to be appointed to a particular [governmental] job." *Molerio v. FBI*, 749 F.2d 815, 823 (D.C. Cir. 1984) (quoting *Roth*, 408 U.S. at 577, and citing *MacFarlane v. Grasso*, 696 F.2d 217, 221–22 (2d Cir. 1982)). Although McKinney received offers to work at Kelly Miller and Eliot Hine, he did not have a legitimate claim of entitlement to those positions because the job offers were contingent on the outcome of a statutorily required background check.  *See* D.C. Code §§ 4-1501.03(a)(3), 4-1501.02(3) (making background checks mandatory for all DCPS teachers); *id.* § 4-1501.03(e) (providing that "[a]n applicant for a position at a covered child or youth services provider may be offered

---

[5]  We reject the District's contention that McKinney has not preserved an argument based on this purported property interest by not discussing it in his Opposition to the Motion to Dismiss.  In his Complaint, he explicitly asserted a property interest in the offered positions, and the district court thus addressed whether McKinney had such an interest. *See Bastani v. Am. Fed'n of Gov't Emps., AFL-CIO*, 70 F.4th 563, 569 (D.C. Cir. 2023) ("To preserve a claim of error on appeal, a party typically must raise the issue before the trial court."); *Tanner-Brown v. Haaland*, 105 F.4th 437, 444 (D.C. Cir. 2024) (noting that, even when a petitioner fails to raise a claim in the district court, we generally do not deem the issue forfeited if the district court actually considered it).

employment *contingent upon receipt of a satisfactory background check*" (emphasis added)).

McKinney relies on a single, out-of-circuit, nonprecedential summary order to contend that he had a legitimate claim of entitlement to the jobs he was offered because his acceptance was "subject only to the completion of ministerial tasks prior to his start date," namely the background checks. *See Cancel v. NYC Hum. Res. Admin./Dep't of Soc. Servs.*, 527 F. App'x 42, 45 (2d Cir. 2013). But even if we put aside his failure to cite binding precedent, a background check is not "ministerial." Section 4-1501.05a of the D.C. Code provides that "[t]he information obtained from the criminal background check shall not create a disqualification or presumption against employment or volunteer status of the applicant *unless the Mayor determines* that the applicant poses a present danger to children or youth." D.C. Code § 4-1501.05a(a) (emphasis added). The background-check process thus involves not just "obedience to instructions or laws" but also "discretion, judgment, or skill" — which means that the process is not "ministerial." *Ministerial*, Black's Law Dictionary (12th ed. 2024). Moreover, a satisfactory background check is a substantive requirement that ensures the security of schools and the safety of students. *See* D.C. Code §§ 4-1501.03(a)(3), (e), 4-1501.02(3); *cf. Beilan v. Bd. of Pub. Educ., Sch. Dist. of Phila.*, 357 U.S. 399, 405 (1958) ("That the school authorities have the right and the duty to screen the officials, teachers, and employees as to their fitness to maintain the integrity of the schools as a part of ordered society, cannot be doubted." (cleaned up)).

McKinney can claim no entitlement to employment when he merely received offers that were contingent on clearing an important, statutorily mandated hurdle. *See Carducci*, 714 F.2d at 176–77 (no "rules, understandings or circumstances"

that might otherwise give rise to a legitimate claim of entitlement "can contravene the intent of the legislature regarding the employment entitlements that can be conferred"). The job offers that McKinney received did not — indeed, could not — guarantee that he ultimately would be hired, and he therefore had no claim of entitlement and no constitutionally protected property interest.

### 3.  McKinney's Eligibility for DCPS Positions

McKinney erroneously asserts that he had a protected interest in his eligibility for DCPS employment because the Settlement Agreement "created and guaranteed" such an interest. McKinney Br. 22. As already discussed, *see supra* Part II.B, the Settlement Agreement did nothing more than "allow[]" McKinney "to apply for teaching positions." Settlement Agreement 1 (J.A. 24). The Agreement's plain language and context conferred no entitlement to employment eligibility. Moreover, DCPS could not have contractually made such a guarantee. Without knowing whether McKinney would pass the mandatory background check, DCPS could not promise that McKinney would be eligible to be hired in the future. *See District of Columbia v. Greene*, 806 A.2d 216, 222 (D.C. 2002) ("It is a basic principle of District law that a contracting official cannot obligate the District to a contract in excess of his or her actual authority."). McKinney thus could have no "legitimate claim of entitlement to" his eligibility for DCPS positions. *Roth*, 408 U.S. at 577.

### D.  Procedural Due Process (Liberty Interest)

Finally, McKinney claims that DCPS deprived him of liberty without due process of law by formally or automatically excluding him from any teaching job with DCPS. That claim is forfeited because he did not raise it before the district court.

18

To state a claim for deprivation of liberty without due process, a plaintiff must allege a constitutionally protected liberty interest. *See Roth*, 408 U.S. at 569. "One of the liberty interests protected by the Fifth Amendment is the right to 'follow a chosen profession free from unreasonable governmental interference.'" *Campbell v. District of Columbia*, 894 F.3d 281, 288 (D.C. Cir. 2018) (cleaned up) (quoting *Greene v. McElroy*, 360 U.S. 474, 492 (1959)). But loss of a specific public job, standing alone, does not implicate a liberty interest. *See Roth*, 408 U.S. at 573, 575.

McKinney's argument on appeal is that DCPS formally or automatically excluded him from obtaining a teaching job with DCPS. But before the district court, he made a different claim. There, he argued that DCPS broadly precluded him from pursuing his chosen career in the District of Columbia. As we have explained, a "stigma or disability" claim is a challenge to a governmental "adverse employment action" that is coupled with "a stigma or other disability that foreclose[s] the plaintiff's freedom to take advantage of other employment opportunities." *Langeman v. Garland*, 88 F.4th 289, 297 (D.C. Cir. 2023) (cleaned up). Such claims may rely upon different theories of liability. In particular, we have distinguished between (1) a claim that the government "'formally or automatically excluded [a] plaintiff from work on some category of future agency contracts or from other government employment opportunities'"; and (2) a claim that the government's actions "had the effect of broadly 'precluding plaintiff from pursuing [his] chosen career.'" *Id.* (cleaned up) (quoting *Kartseva v. Dep't of State*, 37 F.3d 1524, 1528 (D.C. Cir. 1994)). The former type of claim, which McKinney attempts to bring now, requires a change to the plaintiff's "legal status" that has the "*binding* effect" of "formally or automatically" excluding the plaintiff from employment, such as an adverse "determination of [the plaintiff's] legal

eligibility." *Kartseva*, 37 F.3d at 1528 (emphasis in original). McKinney made no arguments to that effect before the district court, and he therefore failed to preserve an automatic-exclusion theory for appeal. *See Bernhardt*, 923 F.3d at 179 ("Absent exceptional circumstances, a party forfeits an argument by failing to press it in district court.").[6]

In any event, McKinney's Complaint fails to adequately plead an automatic-exclusion claim. McKinney does not allege facts that show his formal or automatic disqualification from employment by DCPS due to a change in his legal status. *See Kartseva*, 37 F.3d at 1527 ("[A] government action that potentially constrains future employment opportunities must involve a tangible change in status to be actionable under the due process clause."). Central to McKinney's theory of the case is his allegation that DCPS never actually conducted a background check on him in 2020 or 2021. He thus never claims he was actually disqualified. According to McKinney, DCPS falsely asserted that he had failed his background check as a "pretense" to reject his candidacy. *See* McKinney Reply Br. 7–8; *see also* Compl. ¶ 76 ("Mr. McKinney has been informed that DCPS personnel were instructed by DCPS personnel with authority over them not to effectuate the hiring of Mr. McKinney."). At bottom, McKinney believes that DCPS acted in bad faith and generally refused to "effectuate

---

[6]    Our dissenting colleague argues that McKinney preserved an automatic exclusion claim based on his statement that "[h]e was completely precluded from obtaining any teaching position in any public school in the District." Dissent 7 (quoting Opp'n to Mot. to Dismiss 10). But in the very next sentence, McKinney made clear that he was actually making a broad-preclusion argument: "As a result of DCPS's actions, Mr. McKinney is, in fact, as the D.C. Circuit put it, 'foreclosed from entering the field' of education in the entirety of the jurisdiction of the District of Columbia." Opp'n to Mot. to Dismiss at 10 (quoting *Kartseva*, 37 F.3d at 1529).

[his] hiring" after he entered the Settlement Agreement. Compl. ¶ 76. But that does not amount to a "tangible change in status" or "binding disqualification," as required by case law. *See Kartseva*, 37 F.3d at 1527–28; *Abdelfattah v. Dep't of Homeland Sec.*, 787 F.3d 524, 539 (D.C. Cir. 2015).

Our dissenting colleague contends that McKinney pleaded an automatic-exclusion claim by stating that "[t]he alleged 'ineligible' findings by the DCPS Office of Security constitute determinations under D.C Code § 4-1501.05a that Mr. McKinney 'presents a present danger to children or youth,'" which "preclude[s] him from obtaining employment in his chosen field by educational institutions in D.C., whether public or private." Compl. ¶¶ 90, 93 (quoting D.C Code § 4-1501.05a(a)); *see* Dissent 7–8. But the cited statement by McKinney makes no sense because disqualification under Section 4-1501.05a requires the existence of a background check, which McKinney alleges never occurred. *See* D.C. Code § 4-1501.05a(a) ("The information obtained from the criminal background check shall not create a disqualification or presumption against employment or volunteer status of the applicant unless the Mayor determines that the applicant poses a present danger to children or youth."). And in any event, even if McKinney had alleged that he failed a background check, that would not have changed his "formal legal status" such that he would have been "formally or automatically" disqualified from future employment. *Kartseva*, 37 F.3d at 1528 (emphasis omitted). As noted, McKinney's employment still would have been subject to the Mayor's determination of whether he posed a present danger to children or youth. *See* D.C. Code § 4-1501.05a(a).

21

\*　　\*　　\*

For the reasons discussed, we conclude that the district court correctly dismissed McKinney's Complaint for failure to state a claim.  We therefore affirm the judgment of the district court.

*So ordered.*

PILLARD, *Circuit Judge*, concurring in part and dissenting in part: I agree that Darian McKinney's complaint fails to identify a property interest, but I disagree with two other holdings. First, McKinney's allegations that the District of Columbia Public Schools summarily rejected his applications without following its own application-review process suffice to state a claim of breach of the contractual duty of good faith and fair dealing. Second, McKinney's allegations that DCPS automatically excluded him from teaching positions in the District of Columbia public schools by baselessly designating him a "present danger to children and youth" suffice to identify a protected liberty interest within the meaning of *Kartseva v. Department of State*, 37 F.3d 1524 (D.C. Cir. 1994). I would reverse and remand to the district court on those counts.

## I.

The D.C. Background Check Act (Act) requires every "applicant who is under consideration for paid employment" by the District of Columbia Public Schools (DCPS) system to undergo a criminal background check. D.C. CODE § 4-1501.03(a)(1). DCPS conducts the background check after an applicant accepts a conditional offer of employment. D.C. Mun. Regs. tit. 6B § 415.3(a). As relevant here, a background check "shall not create a disqualification or presumption against employment" unless the applicant "poses a present danger to children or youth." D.C. CODE § 4-1501.05a(a). The Act directs DCPS to consider, in making any "present danger" determination, several statutorily identified discretionary factors. *Id.* § 4-1501.05a(a)(1)-(7). DCPS must then make a "final suitability determination" that establishes whether the applicant "poses a present danger to children or youth." *Id.* § 4-1501.05a(a); D.C. Mun. Regs. tit. 6B § 436.5. If the applicant is determined to pose such a danger, "any conditional employment offer shall be withdrawn" and the applicant "shall

be notified of the final suitability determination." D.C. Mun. Regs. tit. 6B § 436.8.

The Act provides appeal rights to applicants under consideration whom DCPS rejects as posing a present danger to children or youth. DCPS must inform the applicant "in writing" of the application denial and, "within 30 days of the date of the written statement," the applicant may appeal it to the D.C. Commission on Human Rights. D.C. CODE § 4-1501.05a(c). To do so, the applicant must file with the Commission a "Notice of Appeal" and "a copy of the suitability determination being appealed." D.C. Mun. Regs. tit. 6B § 439.6.

## II.

### A.

The duty of good faith and fair dealing requires, at a minimum, that when an applicant applies for a position at a particular DCPS school during the term of a settlement agreement inviting him to "apply" and identifying the benefits he would enjoy if hired, the District must follow its own statutorily required procedures during the hiring process. Ordinarily, applications submitted through the DCPS electronic hiring system may be accessed by schools with available positions. And, if a school offers an applicant a position, it submits the chosen applicant's name to DCPS's Career Office for administrative processing, including completion of a background check through the DCPS Office of Security.

Before the events at issue here, McKinney had been a DCPS teacher for four years when the parties settled a prior dispute (not at issue here) and McKinney resigned his

employment, effective August 27, 2019. The terms of his Settlement Agreement with DCPS bear on McKinney's contract claim.

The Settlement Agreement provided that "McKinney shall be allowed to apply for teaching positions at DCPS starting the 2020-2021 school year." Settlement Agreement 1 (J.A. 24). He claims he accordingly had a "reasonable expectation[]," consistent with the Settlement Agreement and applicable law, custom, and practice, that DCPS would follow its ordinary procedure in processing any applications for teaching positions he submitted. *See Howard Univ. v. Roberts-Williams*, 37 A.3d 896, 906 (D.C. 2012). McKinney plausibly alleges that it did not follow that procedure. That is enough to state a claim for breach of contract.

I disagree with my colleagues that DCPS honored McKinney's right "to apply" merely by allowing him to go through the motions of submitting job applications through DCPS's online portal. Majority Op. 10. In my view, the Settlement Agreement requires that DCPS fairly evaluate those applications. If a school wants to hire him but DCPS finds him to be a danger to children, it may of course reject the application; if it does so baselessly and McKinney so establishes on appeal, however, it may not reject the application on that ground. The Agreement cannot reasonably be read to ensure a right to upload an application to the portal but, when a school selects McKinney's application and decides to hire him, to allow DCPS to block his hiring for no reason at all.

Consider that the Settlement Agreement provided that, even though McKinney would be "[e]xcess[ed]," Settlement Agreement 1 (J.A. 24), he would not be subject to the three-year bar against applying that would ordinarily pertain to

persons in that status but instead could apply to DCPS for hire the very next school year, *see* Majority Op. 4. That provision would be nonsensical if the right "to apply" meant, as the majority concludes, only the chance to submit applications that DCPS had no obligation to fairly process. Indeed, reading the Settlement Agreement as DCPS does puts McKinney on a par with persons who are categorically barred from working for DCPS due to their involvement in "any sexual offenses involving a minor," D.C. CODE § 4-1501.05a(b)—a category that nobody contends applies to McKinney.

The right "to apply" under the Settlement Agreement carries its ordinary meaning of affording him the standard process by which DCPS reviews applications, starting with their submission and ending with the applicant being hired or turned down. It does not guarantee McKinney more process nor does it allow DCPS to afford him less than any other applicant. Other aspects of the Settlement Agreement underscore that McKinney's right "to apply" denotes not just a hollow right to submit applications online, but one that could lead to DCPS hiring him as a teacher: If McKinney were hired within a year of the date of the settlement, the Settlement Agreement provides that DCPS would treat him as having no break in service for purposes of seniority, leave, and pension benefits. Settlement Agreement 2 (J.A. 25); *see* Majority Op. 4. Again, McKinney does not contend that the Settlement Agreement promised that he would be hired. He has plausibly alleged that, once he accepted a conditional offer to teach at a DCPS school, the Agreement required DCPS to process his application as it would for any other applicant not subject to a valid hiring bar.

The majority's premise that the "Settlement Agreement . . . is silent about how DCPS must handle his applications" is mistaken. Majority Op. 9. The D.C. Background Check Act

and its implementing regulations were in effect when the parties entered the Settlement Agreement and thus "form a part of the contract as fully as if they had been expressly referred to or incorporated in its terms." *Washington v. District of Columbia*, 137 A.3d 170, 177 (D.C. 2016) (internal quotation marks omitted). As relevant here, the Act requires DCPS to: (1) conduct criminal background checks on applicants, *see* D.C. CODE § 4-1501.03(a)(1); (2) make a "present danger" determination based on, *inter alia*, the results of the background check, *id.* § 4-1501.05a(a); and (3) provide a copy of a determination of unsuitability to enable an affected applicant to appeal it, D.C. Mun. Regs. tit. 6B § 439.6. McKinney plausibly alleges that DCPS violated those terms here. Once he was offered teaching jobs at DCPS schools, the school district failed to follow the requisite process when it: (1) did not conduct a background check, Compl. ¶ 35 (J.A. 8); (2) deemed him a "present danger" despite the absence of a background check, *id.* ¶ 90 (J.A. 17); and (3) did not provide him with the written unsuitability determination he needed to initiate his appeal, *id.* ¶¶ 49, 73 (J.A. 10, 14).

Those provisions are not a freestanding entitlement for everyone who merely uploads applications to the portal "to demand background checks," Majority Op. 12, but they apply to McKinney as they would to anyone whose applications proceeded as far as his did. Allegations that DCPS failed to conduct background checks in connection with the post-settlement job offers McKinney received and accepted, and provided him no statement of grounds for the unfavorable determinations from which he could appeal, plainly state a claim of breach of the duty of good faith and fair dealing. If a D.C. public employer "breached . . . the duty of good faith and fair dealing . . . when it failed to follow its published hiring procedures," *Martin v. Washington Metro. Area Transit Auth.*, 273 F. Supp. 2d 114, 117 (D.D.C. 2003) (internal quotation

marks omitted), DCPS even more clearly did so here when it failed to follow *statutorily required* hiring procedures.

Custom and practice point in the same direction. In the years before the Settlement Agreement, McKinney had twice been subjected to background checks—once for a job offer from a DCPS school and once while teaching—and DCPS twice deemed him ineligible as "a present danger to children or youth." Each time, DCPS provided McKinney the written notice of determination and instructions for appeal to the D.C. Commission on Human Rights, and each time he succeeded in overturning the ineligibility determination. Compl. ¶¶ 14, 24, 46 (J.A. 5, 7, 10). When McKinney entered the Settlement Agreement with DCPS, he had every reason to assume that, if it were to similarly reject him for future positions, it would again—as it had twice before—provide him the written adverse determination he needed in order to appeal. Its unjustified failure to do so precluded McKinney from enjoying the fruits of the Settlement Agreement.

The majority errs in reasoning that DCPS "treat[ed] McKinney no worse than it is allowed to treat other applicants" and so concluding that he seeks not just fair consideration, but "special treatment." Majority Op. 10. That would be the case if McKinney were, for example, claiming entitlement to priority consideration for certain jobs or procedural safeguards not available to other applicants. But he is not. All "fair consideration" means here is treating McKinney's applications the same as DCPS would any other applicant's pursuant to its ordinary process, including the relevant statutory provisions that bind it.

McKinney's claim does not depend on any assertion that DCPS has a "general duty to review employment applications tendered by job-seekers" or is bound to "consider . . . the

candidacies of all would-be employees." Majority Op. 10. That analysis ignores key allegations that McKinney had been offered jobs at specific D.C. schools in 2020 and 2021 when DCPS summarily—and, he alleges, baselessly—deemed him ineligible. My colleagues acknowledge that "an applicant who 'is denied [employment] because the applicant presents a present danger to children or youth' is entitled to appeal that outcome to the D.C. Commission on Human Rights." Majority Op. 12 n.4 (citing D.C. Code § 4-1501.05a(c)). As the Code itself reflects, the appeal right coheres with the child-protective purpose of the "present danger" hiring bar. Protection of children is not served by denying applicants erroneously determined to endanger children any chance to correct that error on appeal.

The majority gains no ground by asserting that "McKinney's claim does not fall under this provision" because "McKinney claims that no background check was conducted at all." Majority Op. 12 n.4. First, McKinney alleges that DCPS in fact made a "present danger" ineligibility determination, *see* Compl. ¶ 90 (J.A. 17), and we must "assume the truth of the facts alleged in the operative complaint." Majority Op. 2 n.1 (quoting *DeVillier v. Texas*, 144 S. Ct. 938, 941 n.1 (2024)). Second, DCPS never disputes that it so determined—indeed, it argues McKinney had all the process he was due in his effort to administratively appeal it. *See* Appellee's Br. 47-49. Finally, as explained below in Section II.B, the majority cannot logically avoid McKinney's allegations that DCPS made a baseless "present danger" determination by suggesting they are somehow contradicted or waived by his allegations that DCPS so determined without conducting the requisite background check. Majority Op. 19.

DCPS does not deny that, when it disapproves the hire of a job applicant with an accepted job offer in hand because it

has determined that applicant to be a "present danger," it must inform the applicant in writing of the reason for its decision so he may appeal. *See* D.C. Code § 4-1501.05a(c). McKinney plausibly alleges that DCPS did not provide any explanation when it deemed him ineligible. He thereby states a claim that DCPS breached its duty of good faith and fair dealing in implementing the Settlement Agreement. I would reverse the district court's contrary holding.

**B.**

Turning to McKinney's claim that DCPS deprived him of liberty without due process, I would hold that he preserved that claim on appeal. As to the merits of whether McKinney plausibly pleaded a liberty interest, I would hold that, by designating him a present danger to children and youth, DCPS automatically excluded him from working as a teacher in the D.C. public school system, which counts as "some category of future . . . government employment opportunities." *Kartseva*, 37 F.3d at 1528. Under *Kartseva*, that exclusion amounts to a deprivation of McKinney's liberty interest. Because he was not afforded basic due process, I would reverse.

As a threshold matter, the complaint does not support the majority's holding that McKinney forfeited his automatic-exclusion claim by failing to raise it below. *See* Majority Op. 19. McKinney alleges that DCPS's findings that he is "ineligible" for teaching positions in the District of Columbia constitute legal "determinations" under D.C. Code § 4-1501.05a that he "presents a present danger to children or youth." Compl. ¶ 90 (J.A. 17). He alleges those determinations "preclude[d] him from obtaining employment in . . . educational institutions in D.C." and rendered him "ineligible to teach in D.C." *Id.* ¶¶ 93, 115 (J.A. 17, 21). He alerted DCPS to the nature of that claim in his briefing below, where he

argued that such a "legally authorized conclusion by DCPS" had the effect of "completely preclud[ing] [him] from obtaining any teaching position in any public school *in the District*." Opp'n to Mot. to Dismiss at 10-11, *McKinney v. District of Columbia*, No. 22-cv-2137 (D.D.C. Oct. 26, 2022), Dkt. No. 8 (emphasis added). That was enough to put DCPS and the district court on fair notice as to McKinney's claim that DCPS's "present danger" determination automatically excluded him from "some category" of government job— namely, public school teaching in D.C.

On the merits, McKinney pleads facts sufficient to state a claim of automatic exclusion. He alleges that DCPS invoked the D.C. Code's "present danger" provision so it could automatically exclude him from any future DCPS teaching position. That is a plausible inference from his allegations that his 2020 and 2021 applications were never acknowledged or rapidly rejected (often without interview), and that offers he received and accepted were rescinded without any substantive explanation. *See* Compl. ¶¶ 50-53 (J.A. 11). Indeed, his situation is essentially the same as that of the plaintiff in *Lea v. District of Columbia*, No. 22-cv-1396, 2022 WL 3153828 (D.D.C. Aug. 8, 2022). There, the district court denied the District's motion to dismiss because an applicant's allegations that she failed to receive any interviews after applying for many legal positions in the D.C. government raised the plausible inference that it had automatically excluded her from those roles. *Lea*, 2022 WL 3153828, at *6. McKinney's allegations here are much stronger, as he also alleges that two schools offered him positions from which DCPS summarily later excluded him. The allegations, taken together, suffice to state a claim for a deprivation of his liberty interest.

The majority treats as dispositive McKinney's allegation that DCPS never actually completed background checks in

connection with his DCPS job offers in 2020 or 2021. *See* Majority Op. 19. It appears to reason that, because the law requires a disqualification decision to rest on results of a background investigation, alleging that no such investigation was conducted amounts to conceding that no disqualification decision could have been made. That reasoning is mistaken in two independent ways.

First, the conclusion that McKinney "never claims he was actually disqualified," Majority Op. 19, because he alleges no background checks occurred is unwarranted. There is nothing illogical about alleging that DCPS both failed to conduct a background check and made a baseless "present danger" determination. After all, McKinney does not contend that *failed background checks* automatically disqualified him from teaching roles in D.C., but that DCPS's *groundless present danger determination* did so. *See* Compl. ¶¶ 90, 93 (J.A. 17). Only DCPS's factual position—not McKinney's—rests on DCPS having done a background check that turned up information permitting it to conclude he posed a present danger. McKinney's allegations that DCPS told him by email that it found him ineligible because of a failed background check, *e.g.*, *id.* ¶ 34 (J.A. 8), do not depend on DCPS having in fact conducted any such check. To the contrary, McKinney alleges that DCPS did not run the required criminal background checks at all, but only cited the requirement to clear such a check as pretext to (baselessly) designate McKinney as a "present danger" and deny him any job with DCPS. *See id.* ¶¶ 35, 76 (J.A. 8, 14). That is legally sufficient to state a claim for the deprivation of a liberty interest. And, because McKinney also plausibly alleges that he was denied the process he was due based on DCPS's failure to provide him with the materials required to appeal, *see supra* Part II.A, I would reverse and remand to the district court, as we did in *Kartseva*, for

discovery into the "extent of the . . . disqualification." 37 F.3d at 1528-29.

Second, McKinney pleads in the alternative that *even if* DCPS in fact conducted background checks, it provided no grounds to deem him ineligible as a present danger to children or youth and, in any case, DCPS stymied the administrative appeal process he was due. *See* Compl. ¶ 36 (J.A. 8) ("[T]here was no legitimate basis on which Mr. McKinney could have 'failed' the background check if one had been conducted."); *id.* ¶ 56 (J.A. 12) (same); *id.* ¶ 73 (J.A. 14) ("Alternatively, if DCPS did conduct a background check on Mr. McKinney which he 'failed' in these years, DCPS simply refused to initiate or conduct its own appeals process."). If DCPS had information disqualifying McKinney from the teaching jobs at Kelly Miller and Eliot Hine Middle Schools, it was obligated to defend that determination before the D.C. Commission on Human Rights in any appeal McKinney might have brought. McKinney's plausible allegations that it instead did an end-run around that process suffice to state a due process claim.

\*\*\*

Darian McKinney alleges that DCPS falsely asserted he failed background checks as a pretext to exclude him from teaching positions to which he was entitled to apply and, indeed, had already been offered by two middle schools in the District. He alleges that DCPS violated its own statutorily required procedures by deeming McKinney ineligible for hire and failing to provide him the written determination of ineligibility that he needed to appeal. DCPS allegedly failed to provide the requisite written decisions even though it had done so twice before—and both prior times had had its designations overturned on appeal. In my view, McKinney's allegations plainly state claims of breach of the duty of good faith and fair

dealing incorporated into the Settlement Agreement between McKinney and DCPS and deprivation of a liberty interest in pursuing public school teaching positions in D.C. without constitutional due process. Accordingly, I join Part II.C. but respectfully dissent from Parts II.B and II.D of the opinion of the court.